# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0311
════════════

NELDA GONZALES, PETITIONER,

v.

SOUTHWEST OLSHAN FOUNDATION REPAIR COMPANY, LLC, D/B/A/ OLSHAN
FOUNDATION REPAIR COMPANY, RESPONDENT

════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
════════════════════════════════════════════════════════

**Argued October 15, 2012**

JUSTICE GUZMAN delivered the opinion of the Court.

We decide whether the implied warranty for good and workmanlike repair of tangible goods
or property in *Melody Home Manufacturing Co. v. Barnes* can be disclaimed or superseded.[1] The
*Melody Home* warranty is a "gap-filler" warranty similar to the one we addressed in *Centex Homes
v. Buecher* for good and workmanlike construction of a new home.[2] As in *Buecher*, we hold that
parties cannot disclaim but can supersede the implied warranty for good and workmanlike repair of
tangible goods or property if the parties' agreement specifically describes the manner, performance,

─────────────────

[1] 741 S.W.2d 349, 354–55 (Tex. 1987).

[2] 95 S.W.3d 266, 269, 273 (Tex. 2002).

or quality of the services. Because the parties' agreement here specifies that the service provider would perform foundation repair in a good and workmanlike manner and adjust the foundation for the life of the home due to settling, the express warranty sufficiently describes the manner, performance, or quality of the services so as to supersede the *Melody Home* implied warranty. We further hold that the plaintiff's remaining Deceptive Trade Practices Act claims are time barred because they were filed more than two-and-one-half years after one of the defendant's employees informed the plaintiff of the allegedly defective nature of the defendant's work. Thus, we affirm the court of appeals' judgment that the plaintiff take nothing.[3]

## I. Background

Gonzales hired a plumber to repair water leaks under her foundation and hired Southwest Olshan Foundation Repair Co., LLC, d/b/a Olshan Foundation Repair Co. (Olshan) to repair the foundation problems the water leaks had caused. The foundation repair contract included a lifetime, transferrable warranty on the work requiring Olshan to adjust the foundation due to settling. The contract further provided that Olshan "perform all the necessary work in connection with this job . . . in a good and workmanlike manner."[4] The work included cosmetic repairs to the interior of the house, such as taping, floating, texturing, and painting walls and ceilings. In April 2002, Gonzales noticed doors not locking, windows not opening, and new cracks appearing in previously repaired

---

[3] We do not address Gonzales's ability to make a future claim under her express, lifetime warranty. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'Ship*, 146 S.W.3d 79, 96 (Tex. 2004) ("[A] warranty for repair services [is] not breached until further repairs [are] refused.").

[4] The lifetime warranty was contained in a separate warranty certificate that was attached to the contract and incorporated by reference.

2

walls. Gonzales informed Olshan and her property insurer, who both informed Gonzales that there were additional plumbing leaks. Olshan excavated tunnels under the home to allow a plumbing company to repair those leaks in May 2003. Olshan leveled the foundation in August 2003.

Olshan again leveled the foundation in October 2003. Gonzales testified that, during this work, an Olshan employee informed her that Olshan was "not doing a good job under the home. . . . In fact, it's the worst job I have ever seen." According to Gonzales, the employee cautioned her not to allow Olshan to fill in the tunnels because the foundation had not been repaired properly and advised her to contact an attorney. Gonzales refused to allow Olshan to fill in the tunnels after asking for proof of the nature of the defective components Olshan removed from the foundation support. Gonzales alleges the foreman informed her they had spent too much time on her home and, in light of their other work, would place her on a wait list for four to six months. Olshan left the property, and Gonzales believed Olshan would return in four to six months to correct the work.

On November 12, 2003, Olshan sent an engineer to take elevations and a plumber to check for plumbing leaks. The engineer told Gonzales the foundation was functioning properly, and Gonzales believed she was still on a wait list for further work. In early 2004, Olshan returned to fill in the tunnels under Gonzales's home in response to a call by Gonzales's husband.[5] Gonzales again refused to allow Olshan to fill in the tunnels because it had not repaired the foundation.

Gonzales subsequently called Olshan, who sent BEC Engineering, LP (BEC) to inspect the home in July 2005. BEC reported that the foundation was functioning properly. On July 11, 2005,

---

[5] Gonzales's husband had filed for divorce in August 2003.

Olshan's general counsel notified Gonzales that, "[b]ased on th[e] [BEC] report, no adjustments to the . . . underpinning system are required at this time," and Olshan needed to fill in the tunnels if no further plumbing leaks were detected.

In May 2006, Gonzales noticed more cracking. She hired engineer Jim Linehan to inspect her home, and he determined Olshan improperly repaired the foundation by: (1) not epoxying the cable holding the string of piles together, and (2) failing to drive the piles more than 15 feet deep. In June 2006, Gonzales sued Olshan for, among other things, breach of an express warranty, breach of the common-law warranty of good and workmanlike repairs, and DTPA violations.[6] The jury failed to find that Olshan breached its express warranty, but it found that Olshan did breach the implied warranty of good and workmanlike repairs and engaged in unconscionable actions under the DTPA, causing $101,000 in damages to Gonzales's home.[7] The trial court entered judgment in favor of Gonzales for $101,000, as well as $10,127 in engineering fees and $80,000 in attorney's fees under the DTPA.

The court of appeals reversed, concluding that the implied warranty of good and workmanlike repairs is actionable only under the DTPA, not under the common law, and is therefore governed by the DTPA's two-year statute of limitations. 345 S.W.3d 431, 437. The court further found that Gonzales should have discovered Olshan's acts at the latest in October 2003, when she alleged an Olshan employee told her the work was "the worst job [he had] ever seen." *Id*. at 439

---

[6] Gonzales also filed breach of contract claims but abandoned them at trial.

[7] The jury also found that Olshan committed fraud and awarded exemplary damages of $2,500. The court of appeals held that there was legally insufficient evidence to support Gonzales's fraud claim, which Gonzales does not contest in this Court. 345 S.W.3d 431, 441.

4

(alteration in original). Accordingly, the court held that Gonzales's implied warranty and DTPA claims were barred by limitations and did not reach Olshan's remaining arguments, one of which was that the express warranty superseded the implied warranty.[8] We granted Gonzales's petition for review. 55 Tex. Sup. Ct. J. 571, 572 (Tex. Apr. 20, 2012).

## II. Discussion

Olshan asserts that its express warranty superseded the implied warranty of good and workmanlike repair, and the jury's finding that Olshan did not breach the express warranty precludes liability on Gonzales's warranty claims.[9] We agree.

Initially, we determine whether Olshan waived its argument that the express warranty supersedes the implied warranty. Gonzales contends that Olshan waived the issue by failing to raise it in the trial court. We disagree. In *Rocky Mountain Helicopters, Inc. v. Lubbock County Hospital District*, Rocky Mountain asserted in a motion to disregard jury findings that no evidence supported the jury's finding of a DTPA violation, which included a ground for failing to perform services in

---

[8] Olshan's remaining arguments in the court of appeals were: (1) there was no evidence of the reasonable cost of repairs; (2) Gonzales failed to prove a construction defect caused damage; (3) there was no evidence of a misrepresentation, reliance on a misrepresentation, or damages caused by a misrepresentation; and (4) the trial court erred by not submitting a jury question on whether Gonzales wrongfully prevented Olshan from performing warranty work.

[9] Gonzales argues that a breach of the implied warranty of good and workmanlike repairs is actionable under the common law and not only under the DTPA, an issue over which courts have differed. One court of appeals and the Fifth Circuit have held that the implied warranty of good and workmanlike repairs is actionable under the common law and not only under the DTPA. *See Basic Energy Serv., Inc. v. D-S-B Props., Inc.*, 367 S.W.3d 254, 269 n.9 (Tex. App.—Tyler 2011, no pet.); *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 363 n.5 (5th Cir. 1988). Four courts of appeals have held that this implied warranty is only actionable under the DTPA. *See* 345 S.W.3d at 437; *Koehler v. Sears, Roebuck & Co.*, No. 05-98-01325-CV, 2001 WL 611453, at *5 (Tex. App.—Dallas June 6, 2001, no pet.); *Foreman v. Pettit Unlimited, Inc.*, 886 S.W.2d 409, 412 (Tex. App.—Houston [1st Dist.] 1994, no pet.); *Darr Equip. Co. v. Allen*, 824 S.W.2d 710, 712 (Tex. App.—Amarillo 1992, writ denied). Because we need not consider the basis for the implied warranty if, as Olshan argues, it was superseded by the express warranty, we address Olshan's argument first.

5

a good and workmanlike manner. 987 S.W.2d 50, 52 (Tex. 1998). On appeal, Rocky Mountain asserted that no implied warranty arose from the circumstances of the case. *Id*. We held that Rocky Mountain's no-evidence challenge in the post-verdict motion was sufficient to preserve the argument that there was no implied warranty for appeal. *Id*. Here, Olshan objected at the charge conference that there was no evidence to submit the implied warranty question to the jury. We conclude the objection preserved Olshan's argument that no implied warranty exists under the facts of this case. *Id*.

We recognized the existence of "an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner" in *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). We defined good and workmanlike as "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Id*. at 354.[10] We further held that the implied warranty "may not be waived or disclaimed." *Id*. at 355.

In *Centex Homes v. Buecher*, we addressed the implied warranty of good workmanship in new home construction.[11] 95 S.W.3d 266, 273–74 (Tex. 2002). We noted that the "implied warranty

---

[10] *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES: BUSINESS, CONSUMER, INSURANCE & EMPLOYMENT PJC 102.12 (2012) ("Implied Warranty of Good and Workmanlike Performance—Services (DTPA § 17.50(a)(2))[:] Failing to perform services in a good and workmanlike manner. A good and workmanlike manner is that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.").

[11] We recognized the implied warranties of habitability and good and workmanlike construction for new home sales in *Humber v. Morton*, 426 S.W.2d 554, 555 (Tex. 1968).

of good workmanship serves as a 'gap-filler' or 'default warranty'; it applies unless and until the parties express a contrary intention." *Id*. at 273. We held that the implied warranty of good workmanship "attaches to a new home sale if the parties' agreement does not provide how the builder or the structure is to perform." *Id*. Specifically, we stated that, when "the parties' agreement sufficiently describes the manner, performance or quality of construction, the express agreement may supersede the implied warranty of good workmanship." *Id*. at 268.

The *Melody Home* implied warranty of good and workmanlike repair of tangible goods or property—like the implied warranty of good workmanship for a new home in *Buecher*—is a "gap-filler" warranty. *See id*. at 273 (citing to *Melody Home* for the definition of good workmanship). As in *Buecher*, this gap-filler warranty may not be disclaimed but may be superseded if "the parties' agreement sufficiently describes the manner, performance or quality" of the services. *Id*. at 268. In other words, the implied warranty of good and workmanlike repair of tangible goods or property attaches to a contract if the parties' agreement does not provide for the quality of the services to be rendered or how such services are to be performed. *See id*. at 273 ("Thus, the implied warranty of good workmanship attaches to a new home sale if the parties' agreement does not provide how the builder or the structure is to perform.").

Here, the parties' agreement includes two warranty provisions. First, the warranty certificate provides that Olshan would use the Cable Lock system of foundation repair and would adjust the foundation for the life of the home due to settling. Second, the contract provides that Olshan "will perform all the necessary work in connection with this job . . . in a good and workmanlike manner." Gonzales argues that because she did not sign the contract containing the good-and-workmanlike

7

requirement and the trial court admitted the contract for a limited purpose, we cannot consider the requirement when determining whether the express warranty superseded the implied warranty. We disagree. The trial court stated that it admitted the contract containing the good-and-workmanlike requirement for evidence of "what in [Olshan's] opinion the company was supposed to do on [Gonzales's] behalf." The good-and-workmanlike requirement is fairly characterized as an obligation of Olshan to Gonzales. Thus, we may consider the good-and-workmanlike requirement to determine whether Olshan's obligations under the express warranty superseded the implied warranty.

In total, the warranty provisions required Olshan to repair the foundation with the Cable Lock system, to perform the work in a good and workmanlike manner, and to adjust the foundation due to settling for the life of the home. This warranty language specified the work Olshan was to provide (foundation repair with the Cable Lock system), the manner in which it was to provide it (a good and workmanlike manner), and how the service would perform (that it would not need adjustments for life due to settling, or, if it did, would be adjusted without cost to the owner). Thus, this warranty language "sufficiently describes the manner, performance or quality" of how Olshan and the foundation are to perform so as to supersede the implied warranty of good and workmanlike repair or modification to tangible goods or property.[12] *Buecher*, 95 S.W.3d at 268.

The jury found that Olshan did not breach the express warranty. Instead, the jury found that Olshan breached the implied warranty of good and workmanlike repairs and engaged in

_____

[12] In light of our determination that the express warranty superseded the implied warranty here and bars Gonzales's implied warranty claim, we need not reach Gonzales's argument that the implied warranty is actionable at the common law in addition to the DTPA.

8

misrepresentations that violated the DTPA. The trial court entered judgment for Gonzales, awarding $101,000 in damages for the implied warranty and DTPA claims, and attorney's fees and engineering fees under the DTPA. Because we have concluded this express warranty superseded the implied warranty of good and workmanlike repairs, the implied warranty cannot serve as a basis for the judgment.

Concerning Gonzales's DTPA claim, the court of appeals held the claim was time-barred because it accrued at the latest in October 2003, when an Olshan employee informed her Olshan was "not doing a good job under the house [and it was] the worst job [he had] ever seen [and she should] find an attorney because [her] house is messed up." 345 S.W.3d at 438–39 (alterations in original). We agree.

The DTPA provides that suits under the chapter "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." TEX. BUS. & COM. CODE § 17.565. In essence, the Legislature codified the discovery rule for DTPA claims. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999). We have explained that, "[o]nce a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011) (quoting *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004)); *see also KPMG*, 988 S.W.2d at 749 (holding that "accrual occurs when

9

the plaintiff knew or should have known of the wrongfully caused injury," not when the plaintiff knows "the specific nature of each wrongful act that may have caused the injury").

Here, Olshan repaired the foundation in July 2001. In April 2002, Gonzales noticed cracks in walls and sticking windows and doors. She testified that she knew something was wrong and that the foundation was shifting. Gonzales further testified that when Olshan was re-leveling the foundation in October 2003, an Olshan employee informed her that "[t]hey are not doing a good job under the home. . . . In fact, it's the worst job I have ever seen" and that "[i]f I were you, I would find an attorney because your house is messed up." Gonzales purchased a camera for the employee to document the defective work, but the same day, "the camera was missing." Gonzales testified that she heard the foreman instruct the crew not to speak to her and that "[a]nybody taking pictures is going to be fired on the spot." Gonzales's exchange with the Olshan employee conclusively established that she knew of the injury in October 2003, without regard to whether she knew the specific nature of each of Olshan's wrongful acts that caused her injury. *See KPMG*, 988 S.W.2d at 750. Gonzales filed suit on July 6, 2006, over two years and eight months later.[13] Absent the application of an equitable tolling doctrine, the evidence conclusively established that Gonzales's DTPA claims are time barred because she brought them more than two years after discovering her injury. *See KPMG*, 988 S.W.2d at 750; TEX. BUS. & COM. CODE § 17.565.

Gonzales contends that Olshan engaged in fraudulent concealment, making her claim timely. We disagree. The doctrine of fraudulent concealment tolls limitations "because a person cannot be

---

[13] The record is not clear on what specific date in October 2003 the exchange between Gonzales and the Olshan employee occurred. Even assuming it occurred on the last day of October 2003, it was more than two years and eight months before Gonzales filed suit.

permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). The DTPA establishes a 180-day limit on tolling for fraudulent concealment. TEX. BUS. & COM. CODE § 17.565 (providing that limitations "may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action"). Even if limitations were tolled for 180 days on Gonzales's DTPA claims, they would still have been filed at least two months late.

Gonzales also argues that the common-law doctrine of fraudulent concealment tolls limitations for DTPA claims and is not limited to 180 days as required by the DTPA limitations statute. We have previously rejected a similar argument. In *Underkofler v. Vanasek*, the plaintiff brought common-law and DTPA claims for legal malpractice against his law firm. 53 S.W.3d 343, 345 (Tex. 2001). We held that the common-law rule tolling limitations for legal malpractice claims until the underlying litigation concluded does not apply to DTPA claims. *Id*. at 346. We pronounced that the Legislature crafted only two exceptions to the rule that DTPA limitations begin to run when the injury occurs: the discovery rule and the fraudulent concealment rule (both specified in section 17.565 of the Business and Commerce Code). *Id*. at 346. Just as section 17.565 forecloses the application of the common-law tolling rule to legal malpractice claims under the DTPA, it forecloses the application of the common-law doctrine of fraudulent concealment to DTPA claims. The Legislature could have incorporated the common-law doctrine of fraudulent concealment into the DTPA's limitations provision. Instead, it only incorporated the discovery rule and a version of the

11

fraudulent concealment doctrine limited to 180 days, and "we will not rewrite the statute to add . . . a third" exception. *Id.* The common-law doctrine of fraudulent concealment does not apply to Gonzales's DTPA claim, and it is time barred.

### III. Conclusion

The implied warranty of good and workmanlike repair or modification to tangible goods or property is a "gap filler" warranty that implies terms into a contract that fails to describe how the party or service is to perform. Although the parties cannot disclaim this warranty outright, an express warranty in their contract can fill the gaps covered by the implied warranty and supersede it if the express warranty specifically describes the manner, performance, or quality of the services. Here, the parties agreed that Olshan would perform the work in a good and workmanlike manner, would use the Cable Lock foundation repair system, and would adjust the foundation for the life of the home if the foundation settled. This express warranty sufficiently describes the manner, performance, and quality of the services so as to supersede the implied warranty. Because the jury found that Olshan did not breach the express warranty, Gonzales cannot prevail on her warranty claims. Gonzales's only remaining claim is under the DTPA. Because Gonzales learned of her injury directly from Olshan more than two-and-one-half years before she filed suit, her DTPA claim is barred by limitations, even assuming the application of the DTPA's 180-day tolling provision for fraudulent concealment. We affirm the judgment of the court of appeals.

_____
Eva M. Guzman
Justice

OPINION DELIVERED:   March 29, 2013