**Reverse and Render and Opinion Filed July 9, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00191-CV

**AUBREY THOEDE, IMPROPERLY NAMED AS AUBREY THOEDE D/B/A DIRT FREE CARPET, DIRT FREE CARPET & UPHOLSTERY CLEANING, INC. AND DFC INTERIOR SERVICES, INC., Appellants**

**V.**

**STEVE WORTHAM AND KARIN WORTHAM, Appellees**

**On Appeal from the County Court at Law No. 5
Collin County, Texas
Trial Court Cause No. 005-01524-2014**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Lang-Miers, and Justice Whitehill
Opinion by Justice Whitehill

This case involves damage to a residential slate tile floor during a professional cleaning. Steve and Karin Wortham, the homeowners, sued Aubrey Thoede, Dirt Free Carpet and Upholstery Cleaning, Inc. (Carpet), and DFC Interior Services, Inc. (Interior) for negligence, breach of contract, and violation of the Texas Deceptive Trade Practices Act (DTPA), and a jury awarded damages on all theories of recovery.

In five issues with multiple subparts, appellants argue that (i) the evidence is legally and factually insufficient to support a judgment against them on any theory of recovery; (ii) the jury charge violated *Crown Life Ins. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000) because it "submitted

invalid theories broadly;" and (iii) the damages are excessive and the attorney's fees award must be vacated.

We conclude that the evidence is legally insufficient to support a judgment against Thoede under any theory of recovery because there is no evidence of alter ego, joint enterprise, use of an assumed name, or individual action giving rise to liability. Thus, Thoede is not liable either individually or jointly and severally with the other defendants.

We further conclude that the evidence is legally insufficient to support DTPA recovery against any appellant because there is no evidence of an alleged false, deceptive, or misleading act that was the producing cause of the Worthams' damages. Further, there was no breach of warranty because (i) the contract's express warranty superseded any implied good workmanship warranty, and (ii) express warranty was not submitted to the jury. Because there is no DTPA liability, there can be no DTPA additional damages.

There is no basis for joint and several liability because there was no evidence of a joint enterprise and there are no joint tortfeasors. Although the evidence is legally insufficient to support a breach of contract by Interior, because it was not a party to the contract, it is sufficient to support contract recovery against Carpet, which was the only entity with whom the evidence establishes that the Worthams contracted. The damages for this breach, however, are limited by the contract's express liability limitation. Because Carpet breached the contract, the Worthams are entitled to recover costs and attorney's fees from Carpet.

The evidence is sufficient to support negligence recovery against Interior because its failure to comply with industry standards for this type of cleaning damaged the floor. Carpet, however, did not perform any services. Therefore, the Worthams are entitled to recover negligence damages from Interior but not from Carpet.

Finally, we conclude that there was no *Casteel* violation because the questions about which appellants complain were not broadly submitted by combining multiple theories of recovery.

We therefore reverse the trial court's judgment (i) against Thoede in toto; (ii) against Carpet and Interior for actual and additional DTPA damages; (iii) awarding of costs and attorney's fees against Interior; and (iii) awarding damages jointly and severally against appellants. We render judgment that the Worthams recover: (i) $1,515 for breach of contract and $43,751.08 in costs and attorney's fees from Carpet, with post-judgment interest to accrue at the rate of 5% (five percent) compounded annually from the date of the trial court's judgment until paid; and (v) $12,797.50 from Interior for negligence, with post-judgment interest to accrue at the rate of 5% (five percent) compounded annually from the date of the trial court's judgment until paid.

## I. BACKGROUND

Carpet provided the Worthams an estimate for cleaning a slate tile floor in their home, which the Worthams later accepted. Interior, however, performed the cleaning. The floor was not cleaned to the Worthams' satisfaction or in accordance with industry standards, and some tiles were damaged in the process.

The Worthams subsequently sued Thoede (a manager, employee, and sole shareholder of Carpet and manager of Interior), Carpet, and Interior for DTPA violations, breach of contract, and negligence. A jury awarded actual damages on all theories of recovery, and additional damages under the DTPA. The Worthams elected to recover under the DTPA, and the trial court rendered judgment against Thoede, Carpet, and Interior, jointly and severally for $12,797.50 in actual damages, $25,595.00 in DTPA additional damages, $43,751.08 in costs and attorney's fees, and an additional $20,000 for conditional appellate attorney's fees. The trial court also awarded post-judgment interest on all amounts.

## II. ANALYSIS

### A. Standard of Review

Appellants raise several legal and factual issues challenging whether the evidence supports the jury's answers to questions in the jury charge. A party who challenges the legal sufficiency of the evidence to support an issue upon which he did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Dallas County v. Holmes*, 62 S.W.3d 326, 329 (Tex. App.—Dallas 2001, no pet.) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). When reviewing a "no evidence" point, we consider only the evidence and inferences supporting the finding and disregard all evidence and inferences to the contrary. *Id.* If there is more than a scintilla to support the finding, the no evidence challenge fails. *Id.*

When challenging the factual sufficiency of the evidence supporting an adverse finding upon which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Id.* In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding and will set aside the verdict only if the supporting evidence is so weak as to be clearly wrong and unjust. *Id.* We note that, in making this review, we are not a fact finder. Thus, we will not pass upon the credibility of the witnesses or substitute our judgment for that of the fact finder, even if a different answer could be reached upon review of the evidence. *See id.*

### B. Is there sufficient evidence to support a judgment against Thoede under any theory of recovery?

Appellant argues that the evidence is legally and factually insufficient to hold Thoede liable under any theory of recovery because he had no personal contact or interaction with the Worthams

and there is no basis for assumed name, alter ego, or joint enterprise liability.[1]  We agree that there is legally no evidence supporting liability against Thoede[2].

### 1.    Assumed Name

The Worthams' argument for recovering from Thoede individually is premised on the fact that they sued him as "an individual doing business as Dirt Free Carpet."  D/b/a means "doing business as" and a d/b/a is an assumed name for a business.  *Dallas Cnty. Flood Control Dist. v. Cross*, 815 S.W.2d 271, 273 n.3 (Tex. App.—Dallas 1991, writ denied).[3]  When an individual is doing business under an assumed name, a judgment rendered against the unincorporated association is binding on the individual.  *See Holberg & Co. v. Citizens Nat'l Ass. Co.*, 856 S.W.2d 515, 517 (Tex. App.—Houston [1st Dist.] 1993, no pet.).  According to the Worthams, Thoede waived his right to complain about suit in this capacity because he failed to file a verified denial.  *See* Tex. R. Civ. P. 93; *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988) (per curiam).

The record, however, shows otherwise.  Defendants' verified second amended answer, filed on behalf of Thoede and Carpet, specifically denies that they are liable to the Worthams in the capacity in which they have been sued.  Thus, the issue was not waived.

Next, the Worthams argue that the evidence shows that Thoede was doing business as Dirt Free Carpet because Carpet and Interiors use a common toll free number associated with digits that spell "DIRT FREE" and a common website located at www.dirtfreecarpet.com.  Customer calls would come in to the common number through a common dispatcher and then be routed to

---

[1] Relevant to issues 1, 4, and 5 in appellant's issue statement.

[2] We do not reach Thoede's factual sufficiency arguments because we sustain his no evidence arguments.  *See Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981) (When both no evidence and insufficient evidence points are raised court rules on the no evidence point first).

[3] When conducting business under an assumed name, a certificate must be filed with the appropriate county clerk. Tex. Bus. & Com. Code § 71.054. This is true for individuals and entities.  *See, e.g.*, Tex. Bus. & Com. Code § 71.051 (individuals); *Id.* § 71.101 (limited liability companies).  Failure to comply with these provisions prevents a party from maintaining an action in a Texas court arising out of a contract in which the assumed name was used until an original, new, or renewed certificate has been filed but does not prevent that person from defending an action or creating an independent ground of liability for a corporate obligation.  Tex. Bus. & Com. Code § 71.201(a).  Here, that Thoede did not file an assumed name certificate is of no consequence.

either Carpet or Interior depending upon the customer's location. Thoede testified that he did not know if he personally owned the common website. The Website lists him as Carpet's owner.

Thoede is Carpet's president and sole shareholder. Carpet's office is in Houston and it also does business in San Antonio. Henry Dudley, a relative, is Interior's president, and Thoede manages that company for him. Interior had an office in Dallas, and did business in Dallas and Angleton.

Both Carpet and Interior leased employees through a single leasing firm, and they all worked under Thoede's direction. Without explanation, Thoede referred to Carpet and Interior as "affiliated companies."

Tim Colby, the technician who first worked on the Worthams' floor, acknowledged that there was some employee overlap between Carpet and Interior. During the relevant time frame, Colby was employed by Interior because Interior was "starting a new company here in Dallas." Colby reported to a regional manager, John Alejos. Alejos testified that he was, and has been a regional manager of Carpet for nineteen years, but that he also worked for Interior.

Josh DeJong has performed bookkeeping and administrative functions for Carpet for eleven years. He also handles books and minor tasks for Interior. DeJong testified that Carpet's employees are paid through a third-party payroll company. And while Carpet and Interior share a website, they have separate bank accounts and separate advertising expense accounts. DeJong confirmed that Interior billed and collected the Worthams' cleaning payment.

The Worthams' trial argument was that Thoede was hiding behind corporate entities. Despite the undisputed fact that Carpet and Interior are separate entities with some employee overlap, the Worthams also suggest that the relationship between the companies demonstrated that Thoede and the three companies were the same.

But Thoede's relationship to the entities was not developed beyond his status as an officer, manager, or shareholder. And there is nothing in this record to establish that the relationship between Carpet and Interior is improper or unreasonable. Indeed, the "creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008).

Although there were frequent shorthand references to "Dirt Free" and "Dirt Free Carpet" throughout the trial, there was no proof that this was an assumed name for Thoede or either company. For example, Ms. Wortham noted that Colby came to the house wearing a "Dirt Free" shirt. And Thoede acknowledged that the "DFC" in "DFCIS" stood for "Dirt Free Carpet." But merely wearing a uniform displaying the words "dirt free," or having the words "dirt free" as part of a corporate name (Dirt Free Carpet Interior Services, Inc.) does not establish the use of "Dirt Free Carpet" as an assumed name.

There is also no evidence pertaining to or establishing that Thoede operated as a sole proprietorship, doing business under an assumed name, or otherwise. In other words, this record contains no proof that Thoede, doing business as Dirt Free Carpet, entered into a contract with the Worthams, performed any services, or made any representations or warranties. In fact, Mr. Wortham first heard of Thoede when Wortham hired an attorney, and Wortham admitted that he had never spoken to Thoede.

Significantly, although the Worthams rely on the jury's affirmative answers to the question asking if Thoede, Carpet, or Interior did business as "Dirt Free Carpet," they fail to explain the relevance of this finding as to Thoede.[4] Specifically, Question 1 asked:

> On the Dates [sic] of the occurrence of any damages in question, if any, did any of those named below do business as Dirt Free Carpet?

---

[4] We acknowledge that the jury finding that Carpet and Interior did business under an assumed name could conceivably be construed to inquire about one of the elements required to establish joint enterprise. But joint enterprise is only relevant to the negligence finding and the jury found that Thoede was not negligent.

Answer "Yes" or "No"

Aubrey Thoede _____

Dirt Free Carpet & Upholstery Cleaning, Inc. _____

DFC Interior Services, Inc. _____

The jury answered affirmatively as to each. But the remainder of the charge does not mention the alleged assumed name again. Instead, the DTPA, negligence, and breach of contract questions ask about the liability of Carpet, Thoede, and Interior in various combinations. There are no questions asking if a business calling itself "Dirt Free Carpet," or Thoede d/b/a "Dirt Free Carpet" did anything.

Therefore, even if Thoede did business as Dirt Free Carpet (which the record shows he did not), there are no Thoede d/b/a Dirt Free Carpet findings to establish Thoede's liability. In other words, the jury's response to the assumed name question is immaterial. *See, e.g., Spencer v. Eagle Star Ins. Co.*, 876 S.W.2d 154, 157 (Tex. 1994) (question immaterial when it should not have been submitted or if it is rendered immaterial by other findings). We therefore conclude that the record does not support imposing personal liability against Thoede based on using an assumed name.

### 2.    Joint Enterprise and Alter Ego Theories

There is also no basis for holding Thoede liable under an alter ego or joint enterprise theory. The joint enterprise jury question was conditioned on an affirmative negligence finding, and the Worthams admit that joint enterprise applies only to negligence.[5]   But the jury found that Thoede was not negligent. Therefore, there is no basis for holding him liable under a joint enterprise theory.

There is also no basis for imposing personal liability on Thoede under an alter ego theory. Corporations are separate legal entities from their shareholders, officers, and directors, and may

---

[5] *See* oral argument recording at 34:49.

not be held personally liable to obligees of the corporation absent a showing that they caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud for direct personal benefit. TEX. BUS. ORGS. CODE § 21.223; *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 457 (Tex. App.—Dallas 2012, pet. denied). This "piercing the corporate veil" may be accomplished by the alter ego theory, which may be applied if there is a unity between the corporation and the individual to the extent the corporation's separateness has ceased and holding only the corporation liable would be unjust. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 201 (Tex. 1995). An individual's standing as an officer, director, or majority shareholder of an entity is, in and of itself, insufficient to support a finding of alter ego. *Doyle*, 370 S.W.3d at 458.

Here, the alter ego theory was not pled, tried by consent, or submitted to the jury. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991) (various theories for piercing the corporate veil must be specifically pled or they are waived, unless they are tried by consent). Moreover, there is no evidence that Thoede used Carpet or Interior to perpetrate a fraud for his personal benefit. Consequently, alter ego cannot support imposing personal liability on Thoede.

### 3. DTPA and Contract

Because there is no basis to hold Thoede liable for any action or inaction of Carpet, Interior, or a business calling itself Dirt Free Carpet, we next examine whether the evidence is legally sufficient to support a judgment against him individually.

The jury found that Thoede individually (i) engaged in a false, misleading, or deceptive practice that was the producing cause of the Worthams' damages; (ii) breached an implied warranty that the quality of the work would be good and workmanlike; (iii) committed the DTPA violations knowingly; and (iv) breached a contract with the Worthams.

The evidence, however, shows that Thoede had no contact with the Worthams before, during, or after the cleaning. Carpet supplied the estimate for the work, and Interior performed

the cleaning, invoiced the Worthams, and received payment. Thoede made no representations about the cleaning or any warranties. He could not have caused confusion about his affiliation, connection, or association with Carpet or Interior because the Worthams had never heard of him until they hired a lawyer. Thoede made no warranties, express or implied, and therefore could not have breached any warranties. And because he did not engage in any false, misleading or deceptive practices or breach any warranties, there is no support for the finding that his conduct was knowing. Thus, the evidence is legally insufficient to support DTPA recovery from Thoede.

Likewise, there is no evidence to support a breach of contract recovery against Thoede. He did not contract with the Worthams. It follows that there could be no breach.

Finally, the judgment awards the Worthams damages, costs and attorney's fees against Thoede, Carpet, and Interior jointly and severally. Joint and several liability is not an independent cause of action, but rather a description of the extent of an individual defendant's own substantive liability for the harm that is caused by the individual defendant together with others. *De La Cruz v. Kailer*, 526 S.W.3d 588, 592 (Tex. App.—Dallas 2017, pet. ref'd). Joint and several liability can arise in several contexts, including, in contract when there are joint promises, *K-Bar Svs., Inc. v. English*, No. 03-05-00076-CV, 2006 WL 903735, at *3 (Tex. App.—Austin Apr. 7, 2006, no pet.) (mem. op. not designated for publication), in tort, *see Austin Rd. Co. v. Pope*, 216 S.W.2d 563, 565 (Tex. 1949), and with a valid alter ego finding, *see Hart v. Moore*, 952 S.W.2d 90, 99 (Tex. App.—Amarillo 1997, pet. denied).

But here there was no negligence finding against Thoede, there is no liability premised on alter ego, joint enterprise, or assumed name, and the evidence is insufficient to support a judgment against him for DTPA or breach of contract. Accordingly, because Thoede is not individually liable for damages, costs, or attorney's fees, there is no basis for holding him jointly and severally liable with the other defendants.

**C.     Is there sufficient evidence to support a judgment against Carpet or Interior?**

**1.     DTPA**

There were three DTPA questions submitted to the jury: (i) breach of an implied warranty of good workmanship, (ii) engaging in a false, misleading, or deceptive act described in the §17.46(b) "laundry list," and (iii) whether any warranty breach or false, misleading, or deceptive act was "knowing."  There was no question concerning breach of an express warranty.[6]

We begin with the implied warranty of good workmanship.[7]  The jury was asked and instructed:

> Was the failure, if any, of any of those named below to comply with a warranty a producing cause of damages to Plaintiffs?
>
> . . .
>
> "Failure to comply with a warranty" means . . . Failing to perform services in a good and workmanlike manner.
>
> A good and workmanlike manner is that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.

The jury answered "Yes" as to all three parties.

Appellants argue that the evidence is insufficient to support breach of the implied good workmanlike warranty, that the warranty is inapplicable because floor cleaning is not "repair or modification of an existing tangible good or property," or alternatively, that the warranty was disclaimed.[8]  The Worthams respond that the evidence was sufficient and the implied good workmanship warranty cannot be disclaimed.

---

[6] Both parties have also stated that there is no express warranty in this case.

[7] Relevant to issues two and three in appellant's issue statement.

[8] Because we conclude that an express warranty displaced an implied warranty of good workmanship, we do not reach whether floor cleaning is a "repair service."

Unlike the implied warranties imposed on certain UCC sales transactions, the implied good workmanship warranty is a common law creation. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995). Specifically, in *Melody Homes Mfg. Co. v. Barnes*, 741 S.W.3d 349, 354 (Tex. 1987), the court first recognized an implied warranty that repairs or modifications of existing tangible goods or property will be performed in a good and workmanlike manner. In so holding, the court observed that "an implied warranty arises by operation of law when public policy so mandates." *Id*. at 353.

The court further held that the implied warranty of good and workmanlike manner cannot be waived or disclaimed because "[i]t would be incongruous if public policy required the creation of an implied warranty, yet allowed the warranty to be disclaimed and its protections disallowed merely by a pre-printed standard form disclaimer . . . ." *Id*. at 355.

However, that implied warranty can be replaced by an express warranty. Specifically, in *Centex Homes v. Buecher*, 95 S.W.3d 266, 273-75 (Tex. 2002), the supreme court considered whether the implied warranty of good and workmanlike construction owed by builders of new homes could be disclaimed. The court explained that the warranty of good workmanship is a "gap filler" or "default warranty"; it applies unless and until the parties express a contrary intention. *Id.* at 273. Thus, while the parties cannot "simply disclaim" the warranty, the parties' agreement may supersede the implied standard for workmanship if it "provides for the manner, performance, or quality" of the work. *Id.* at 274–275. In that case, the court held that a sales contract which provided that the home builder's express limited warranty against defects in workmanship and materials replaced all other warranties. *Centex*, 95 S.W.3d at 268.

Similarly, in the foundation repair case of *Gonzalez v. Southwest Olshan Foundation Repair Co., LLC*, 400 S.W.3d 52, 56–57 (Tex. 2013), the Supreme Court expanded on *Centex* and held that the otherwise applicable implied warranty in *Gonzalez* was superseded because the

parties' agreement specified (i) the work to be performed (foundation repair using the Cable Lock system), (ii) the manner in which it was to be provided (in a good and workmanlike manner), and (iii) how the service would perform (it would not need adjustments for life due to settling, or if it did, it would be adjusted without cost to the owner). *Gonzalez*, 400 S.W.3d at 57. Thus, the court held that the warranty language sufficiently described the "manner, performance, or quality" so as to supersede the implied warranty of good and workmanlike repair or modification to tangible goods or property. *Id.*; *see also Welwood v. Cypress Creek Estate*, 205 S.W.3d 722, 731 (Tex. App.—Dallas 2006, no pet.) (even if implied good workmanship warranty applied to developer services, the warranty was superseded because the agreement provided for the manner, performance, or quality of the services by agreeing to develop the lots in a good and workmanlike manner in accordance with city standards), *Richardson v. Duperier*, No. 14-04-00388-CV, 2005 WL 831745, at *5 (Tex. App.—Houston [14th Dist.] Apr. 12, 2005, no pet.) (mem. op., not designated for publication) (express warranty superseded implied warranty of good and workmanlike construction).

Here, both the estimate and the invoice describe the services to be provided[9] and state that the service provider "fully warrants workmanship and materials on all jobs for seven days after service performed."[10] In other words, this language expressly describes that quality of performance as workmanlike, meaning the "quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *See Gonzalez*, 400 S.W.3d at 56, quoting *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex.

---

[9] The proposal refers to the services as "Clean" and Seal"; whereas, the invoice describes the services as "Clean Slate" and "Seal Slate." The record is clear that both documents refer to the same floors.

[10] The warranty also lists certain limitations on the warranty, but no party argued here or in the trial court that any such limitation is relevant in this case.

–13–

1987).  We thus construe the language at issue here as being an express warranty of good and workman like performance.  Furthermore, because this warranty is specific, there is no need for a gap-filler warranty.  Therefore, the express warranty supersedes any implied workmanship warranty.

There was no breach of express warranty finding.  Instead, the jury found that the implied warranty of good workmanship was breached.  Because we have concluded that the express warranty supersedes the implied good workmanship warranty, the implied warranty cannot support the judgment.  *See Gonzales*, 400 S.W.3d at 57.

Next, we consider whether the evidence is legally sufficient to support a DTPA violation for engaging in false, deceptive, or misleading conduct.  The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  TEX. BUS. & COM. CODE § 17.46(a).  Section 17.46(b) is a laundry list of specifically prohibited acts, including those included in the jury question here:

(i) representing that goods and services had or would have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have,

(ii) representing that goods or services are of a particular quality if they were of another,

(iii) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services,

(iv) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another,

(v) representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve, and

(vi) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Section 17.50 provides the remedy for violating the §17.46(b) laundry-list provisions and for "any unconscionable action or course of action by any person."  Actionable representations

–14–

may be oral or written. *Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826, 838 (Tex. App.—Amarillo 1993, writ denied).

To recover under the DTPA, however, the plaintiff must also show that the defendant's actions were the "producing cause" of actual damages. *See* TEX. BUS. & COM. CODE §17.50(a). This showing requires some evidence that the defendant's act or omission was a cause in fact of the plaintiff's injury. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex. 1995). It is not necessary, however, to show that the harm was foreseeable. *Id.*

The evidence shows that the Worthams' home has slate tile floors in the entryway and kitchen. They have lived in the home for fifteen years, and during that time Mr. Wortham cleaned and sealed the floors three times, but he did not strip them. The housekeeper also cleans the floors with water twice a month.

In 2013, Ms. Wortham saw a "Dirt Free Floors" booth at a home show. Colby offered to clean and reseal the slate floor in the kitchen for $1,515. The estimate was written on a form with the Carpet logo and letterhead listing an address in Barker, Texas and the dirtfreecarpet.com website.[11] Thoede's logo and website for "Aubrey Thoede's hunting facilities" also appears in small print in the left corner of the form. Colby said he may have mistakenly used this form because it was all that was available. He didn't write "DFC Interiors" on the form because he probably didn't notice that it was the wrong form.

Colby performed the cleaning about a month later. He was wearing a "Dirt Free" uniform shirt when he arrived. Although his girlfriend accompanied him, she stayed outside most of the time.

---

[11] Thoede testified that the Barker address is his company address. He did not specify, however, whether he meant Carpet, Interior, or his own personal hunting business.

Colby worked on the floor from approximately 9:00 a.m. to 5:00 p.m., and applied "steam and a lot of water." Ms. Wortham stayed home from work to watch the cleaning, and saw enough standing water on the floor to make a splash when walking across it.

Colby thought there were chemicals on the floor that might complicate the cleaning, and gave Ms. Wortham a quote to neutralize and rinse them. But Ms. Wortham did not want to pay the extra amount. The invoice confirms that the Worthams were billed for cleaning and sealing, but not for stripping the old sealant. Ms. Wortham said that it was "okay with her" that the floors had not been stripped.

According to Ms. Wortham, Colby worked diligently, but seemed to be in a hurry. She overheard a conversation between Colby and his girlfriend about having to be someplace by 5:00 p.m.

Colby applied fans to the floor for about thirty minutes, but the floors were still wet when he left. When he finished, Colby gave Ms. Wortham an invoice with the Interior logo on it. She signed it and paid with a credit card. The credit card payment was processed and received by Interior.

The next morning, the tiles had a dull sheen and there were "shadow lines" in the grout. Mr. Wortham was not satisfied with the cleaning, so he made several calls, and a technician came to the home. The second technician performed some cleaning, but said that the sealer had been put down when the floor was wet and the old sealer had not been stripped. Although the technician used a machine and applied either water, chemicals, or some sort of solution, the cleaning was not successful.

Mr. Wortham attempted to follow up, but could not reach anyone with the telephone numbers he had. So he began searching the website to find someone who would take a phone call

and knew about the job. He described the process of finding a telephone number as "very confusing."

But Mr. Wortham was able to reach someone and a technician came to the home. The technician tried to clean the floor without success. So both the technician and Mr. Wortham called a supervisor.

The next day, a technician and a supervisor came to the home. The supervisor told Mr. Wortham that the floor had always been that way, and this made Mr. Wortham angry. So he showed the supervisor the slate floor in the entryway that had not been cleaned. The supervisor and technician then did a spot clean on the kitchen floor using a couple of machines. Because they appeared to be having some success, Mr. Wortham agreed for them to return the next day to do a deep clean.

The cleaning occurred as scheduled. But the day after, Mr. Wortham noticed flakes and discoloration in the flooring. And a couple of tiles had broken in half. Ms. Wortham testified that in the fifteen years they had been in the home, they had not experienced flaking or pieces coming off of the kitchen floor.

The technician returned to the home and told Mr. Wortham that the damage to the slate was like a car bumper that falls off in the car wash. Mr. Wortham told the technician to "go."

The Worthams argue that the website makes representations about the service quality, and receiving an estimate from Carpet while Interior performed and invoiced the service "could" have confused them. They further argue that because the invoice had warranty terms that could be read to cover damage due to inadequate drying, and Ms. Wortham testified about over-saturation, the "jury could conclude that [Interior] represented that a warranty conferred or involved rights or remedies it did not have."

While we do not dispute the potential for confusion, there is no evidence establishing that actual confusion occurred. Ms. Wortham said she had no idea what warranty, if any, she received from Interior, and allowed the work to proceed without asking. Similarly, Mr. Wortham said that he knew nothing about a warranty, or whether one even existed. He also agreed that he was not misled by one company providing an estimate and another company performing the work.

Neither of the Worthams (or any other witness) testified that Carpet or Interior made any representations to the Worthams about the services or warranties, or caused any confusion about their services or affiliations. Although Mr. Wortham testified that he was confused about which number to call when he looked at the website, this did not occur until after the Worthams decided to purchase the service and it was not completed to their satisfaction. Apparently, this was the first and only time either of the Worthams looked at the website.

There was also no evidence that Carpet or Interior failed to disclose any information to induce the Worthams to purchase the service. Ms. Wortham said that when Carpet provided the estimate, she did not agree, or had no idea that she agreed, for Interior to perform the work. She never said, however, that she was misled, confused, or even aware of the two different companies, either at the time she agreed to purchase the service or when it was performed.

Finally, even if there was evidence of one or more false or misleading acts, there is nothing to establish that such acts were a producing cause of the Worthams' damages because they did not rely on any such acts. An act is a "producing cause" of economic damages under the DTPA if the act is a substantial factor that brings about the injury and without which the injury would not have occurred. *See* TEX. BUS. & COM. CODE § 17.50(a); *Doe,* 907 S.W.2d at 481; *see also Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 616 (Tex. App.—Fort Worth 2006, pet. denied) ("There may be more than one producing cause."). The producing cause standard does not require

foreseeability of harm, but it requires more than that the act merely furnished an attenuated condition that made the injury possible. *Doe*, 907 S.W.2d at 481–82.

Here, although there was expert testimony upon which the jury could reasonably rely to conclude that the floor was not cleaned or sealed properly, there was no evidentiary nexus between any alleged laundry list act and these damages. *See, e.g., Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex. 1996) (deceptive acts must be producing cause injuries). Therefore, there is insufficient evidence to support a DTPA violation.

A consumer who prevails under the DTPA may be awarded three times the amount of economic damages if a defendant committed a knowing violation. TEX. BUS. & COM. CODE § 17.50(b)(1). But, because we conclude that the evidence is insufficient to support a DTPA violation, it follows that the Worthams cannot recover additional damages for a knowing violation.

## 2. Contract

The Worthams nonsuited their breach of contract claim against Interior before trial, and we have concluded there is insufficient evidence to impose contract liability against Thoede. Therefore, we consider only the evidence pertaining to Carpet's breach of contract.

A breach of contract claim consists of the following elements: (i) a valid contract; (ii) plaintiff's performance; (iii) defendant's breach; and (iv) damage to the plaintiff resulting from the breach. *See Barnett v. Coppell North Texas Court, Ltd*., 123 S.W.3d 804, 815 (Tex. App.—Dallas 2003, pet. ref'd).

Carpet and Interior are separate legal entities, and that distinction is material to our analysis because Carpet made the offer and Interior performed the work. The offer to clean the floor for a specified price was provided on a Carpet form at the home show. The Worthams accepted that offer by scheduling the work. Thus, the contract was between Carpet and the Worthams, and it was Carpet's obligation (regardless of who it may have sent to do the work) to perform.

The jury found that the floor was not cleaned properly, and subsequent efforts to remedy the problem apparently made it worse, resulting in broken tiles. Joe Peterson, the Worthams' expert, opined that the cleaning was not performed according to industry standards, and this caused the damage to the floor. Thus, while the Worthams paid for the service, it was not substantially performed, and this evidence is sufficient to support recovery against Carpet for breach of contract.

### 3.     Negligence

Colby, working as an employee for Interior, performed the Worthams' first floor cleaning. There is no evidence that Carpet had any involvement in the actual cleaning. Therefore, we consider only whether the evidence is legally sufficient to support a negligence finding against Interior.

Joe Peterson testified as the Worthams' expert. Peterson restores floors for a living and worked for over fifteen years cleaning floors.

Peterson explained that the Worthams' floor is Brazilian or mudstone, which is not as strong as other types of slate. He inspected the Worthams' floors, and compared the slate in the foyer (which was not cleaned) to the slate in the kitchen (which was cleaned). He found discoloration and "efflorescence" on the kitchen floor, suggesting it had "kind of just been worked over." Efflorescence is a powdery substance that comes up through porous material, appearing like talcum powder. He also saw layers of slate that had separated.

Peterson believed that the floor had been stripped incorrectly by using water rather than mechanical agitation with chemicals. He also opined that Colby sealed the floor incorrectly, "if at all." He noted that Colby had pre-spotted the floor, and said that while this is usually done to carpet, it is not industry standard to pre-spot a hard surface.

Peterson said that Colby should have let the Worthams know about problems he observed and that the floor needed to be stripped or another sealer put down. Colby also oversaturated the

floor and did not dry it fast enough. In essence, Peterson thought the cleaning was "botched." This assessment included introduction to the scope of the work before it started, the way Colby approached the work, "what he did to it," and "how it was handled afterwards." He ultimately opined that the cleaning was not done in a good and workmanlike manner in accordance with industry standards.

Pictures of the damage were admitted into evidence and described by Mr. Wortham. According to Mr. Wortham, the damage shown in the pictures was not there before the cleaning.

Peterson charged the Worthams $3,247.50 to paint the grout, replace the broken tiles, and clean and seal the floor. But that only fixed the immediate problems so they could use the floor; it did not fix everything. The estimated additional cost to complete the repairs was $9,550.

Appellants point to inconsistencies in Peterson's testimony, as well as Alejos's and Colby's testimony that the cleaning was properly performed. Any inconsistencies or credibility determinations, however, were for the jury to resolve. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 695 (Tex. 1986). On this record, the evidence was sufficient for the jury to find that Interior was negligent when it cleaned the Worthams' floor.

**D. Is the evidence sufficient to support joint and several liability against Carpet and Interior?**

Damages were awarded jointly and severally against Thoede, Carpet, and Interior based on a joint enterprise theory. Because we have concluded that Thoede is not liable under a joint enterprise theory, our analysis here is limited to Carpet and Interior.

Joint enterprise liability renders each party the agent of the other, and thus holds each responsible for the negligent acts of the other. *Tex. Dept. of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000). The elements of joint enterprise are: (i) an agreement, express or implied, among the members of the group; (ii) a common purpose to be carried out by the group; (iii) a community of

pecuniary interest in that purpose, among the members; and (iv) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Id*. at 613.

We have concluded that the evidence is legally insufficient to impose negligence liability against Carpet. Therefore, the only way it might be held jointly and severally liable for Interior's negligence is through the jury's joint enterprise finding. On this record, however, as a matter of law the elements of joint enterprise were not established.

Even if there were evidence of some joint enterprise elements, there is no evidence that Carpet and Interior had a common pecuniary interest. Carpet and Interior are separate companies, owned by different shareholders. They have separate bank and expense accounts. There is nothing demonstrating that profits, liabilities, or anything else of a pecuniary nature are shared. Nothing establishes that the payment Interior received for cleaning the Worthams' floor benefitted or impacted Carpet in any way. The absence of evidence supporting a common pecuniary interest is fatal to the joint enterprise finding, and consequently, there is no basis for imposing joint and several negligence liability between Carpet and Interior.

### E. Damages and Attorney's Fees

Appellants argue that (i) the damages are excessive because the contract limits liability to $1,515 (the cost of the cleaning); (ii) the additional damages are excessive because if recoverable, the maximum amount of recovery would be no more than two times $1,515; and (iii) the attorney's fees award must be vacated if the claims supporting the fees are reversed.

The Worthams agree that a negligence finding does not support attorney's fees recovery, but argue that fees are recoverable because there are DTPA and breach of contract findings. We have concluded the evidence is legally insufficient to support DTPA recovery, but sufficient to support Carpet's breach of contract. Therefore, the Worthams may recover costs and attorney's fees from Carpet for breach of contract.

Next, we consider whether the actual damages awarded for Carpet's contract breach are limited by the liability limitation clause in the contract that provides "[Carpet] . . . is not liable for direct or consequential damages for nonconforming goods or services other than to refund the purchase price thereof."[12]

The Worthams argue that contractual liability limitations do not apply to DTPA claims based on violation of an implied good workmanlike warranty. *See Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc*., 997 S.W.2d 803, 813 (Tex. App.—Dallas 1999, no pet.). This is a correct statement of the law. But we have concluded that any implied good workmanship warranty in this case was superseded by the express warranty. Although a limitation of liability clause is effective for a breach of express warranty claim, *see Helena Chem. Co. v. Watkins*, 47 S.W.3d 486, 505 (Tex. 2001), this theory was not submitted to the jury. Thus, we consider only whether the liability could be limited as a matter of contract.

It is well-established that absent a controlling public policy to the contrary, contracting parties can limit their liability to a specified amount. *See Head v. U.S. Inspect. DFW, Inc*., 159 S.W.3d 731, 748 (Tex. App.—Fort Worth 2005, no pet.). Here, the jury awarded $12,797 for Carpet's breach of contract, but the contract clause limits damages to the purchase price of the services, which was $1,515. Therefore, the Worthams' breach of contract recovery against Carpet is limited to $1,515.

We have also concluded that the evidence is sufficient to support the negligence finding against Interior. But Interior was not a party to the contract. Therefore, there is no contractual liability limitation on the negligence damages against Interior.

---

[12] We acknowledge that in certain circumstances not present here, a liability limitation clause may apply to both negligence and breach of contract. *See Mickens v. Longhorn DFW Moving, Inc*., 264 S.W.3d 875, 879 (Tex. App.—Dallas 2008, pet. denied); *Fox Elec. Co., Inc. v. Tone Guard Sec. Inc*., 861 S.W.2d 79, 83 (Tex. App.—Fort Worth 1993, no pet.). But here, we limit our discussion to Carpet's contractual liability because Interior was not a party to the contract and the evidence is insufficient to support a negligence finding against Carpet.

**F.     Charge Error**

Appellants also argue that the trial court erred by submitting jury questions 2, 3, and 7 because they were broad form liability questions that violated *Casteel*.  We disagree.

*Casteel* disapproves the use of broad form questions combining multiple theories of liability.  *Casteel*, 22 S.W.3d at 389.  The questions about which appellants complain, however, asked only about a single theory of recovery.  Specifically, question two asked about false, misleading, or deceptive acts; question three asked about breach of an implied workmanlike warranty, and question seven asked about breach of contract.  Each question included a separate space for findings against each defendant included in the question.  Therefore, the complained-of questions did not violate *Casteel*.

### III.   Conclusion

We therefore reverse the trial court's judgment (i) against Thoede for all damages, costs, and attorney's fees; (ii) against Carpet and Interior for actual and additional DTPA damages; (iii) awarding of costs and attorney's fees against Interior; and (ii) awarding damages jointly and severally against appellants.  We render judgment that the Worthams recover: (i) $1,515 for breach of contract and $43,751.08 in costs and attorney's fees from Carpet, with post-judgment interest to accrue at the rate of 5% (five percent) compounded annually from the date of the trial court's judgment until paid; and (ii) $12,797.50 from Interior for negligence, with post-judgment interest to accrue at the rate of 5% (five percent) compounded annually from the date of the trial court's judgment until paid.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE

170191F.P05

–24–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

AUBREY THOEDE, IMPROPERLY
NAMED AS AUBREY THOEDE D/B/A
DIRT FREE CARPET, DIRT FREE
CARPET & UPHOLSTERY CLEANING,
INC. AND DFC INTERIOR SERVICES,
INC., Appellant

No. 05-17-00191-CV      V.

STEVE WORTHAM AND KARIN
WORTHAM, Appellee

On Appeal from the County Court at Law
No. 5, Collin County, Texas
Trial Court Cause No. 005-01524-2014.
Opinion delivered by Justice Whitehill.
Chief Justice Wright and Justice Lang-
Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED (i) against Aubrey Thoede for all damages, costs, and attorney's fees, (ii) against Dirt Free Carpet & Upholstery Cleaning, Inc. and DFC Interior Services, Inc. for actual and additional DTPA damages, (iii) against DFC Interior Services, Inc. for costs and attorney's fees, and (iv) awarding damages jointly and severally against Aubrey Thoede, Dirt Free Carpet and Upholstery Cleaning, Inc. and DFC Interior Services, Inc.** and judgment is **RENDERED** that: Steve and Karin Wortham recover $1,515 for breach of contract and $43,751.08 in costs and attorney's fees from **Dirt Free Carpet & Upholstery Cleaning, Inc.,** with post-judgment interest to accrue at the rate of 5% compounded annually from the date of the trial court's judgment until paid, and $12,797.50 from **DFC Interior Services, Inc**. for negligence with post-judgment interest to accrue at the rate of 5% compounded annually from the date of the trial court's judgment until paid.

It is **ORDERED** that each party bear its own costs of this appeal.

We further **ORDER that Steve and Karin Wortham recover the $12,797.50 and $1,515 judgments, costs, and interest from North American Specialty Insurance Company as surety on Aubrey Thoede's, Dirt Free Carpet & Upholstery Cleaning, Inc.'s and DFC Interior Service Inc.'s supersedeas bond, with such recovery not to exceed the maximum amount of the bond. After all costs of appellants Aubrey Thoede , Dirt Free Carpet & Upholstery Cleaning, Inc. and DFC Interior Services, Inc. have been paid, the obligations of North American Specialty Insurance Company as surety on Aubrey Thoede's, Dirt Free**

**Carpet & Upholstery Cleaning, Inc.'s and DFC Interior Service Inc.'s supersedeas bond are DISCHARGED.**


Judgment entered July 9, 2018.