**Affirmed and Opinion filed August 14, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00686-CV

---

### SCOTT VAN DYKE, Appellant

### V.

### BUILDERS WEST, INC., Appellee

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-54019**

---

## O P I N I O N

Scott Van Dyke appeals from a final judgment favoring Builders West, Inc. Builders West sued Van Dyke for breach of contract, among other causes of action, for nonpayment on a home renovation project. Van Dyke counter-sued, alleging Builders West overcharged him and performed faulty work. A jury found for Builders West on all claims, and the trial court rendered judgment in accordance with the verdict, awarding actual damages of $321,368.12. The trial court

determined that reasonable fees for Builders West's attorneys amounted to $590,750 and awarded that sum to Builders West as well.

In his appeal, Van Dyke contends that (1) the evidence was legally and factually insufficient to sustain the jury's finding that he breached the contract because Builders West failed to offer expert testimony that it performed certain electrical work in a good and workmanlike manner, (2) the trial court erred in refusing to instruct the jury regarding Builders West's contractual duty to supervise the work of subcontractors, and (3) the trial court erred in awarding attorneys' fees to Builders West at a rate of $500 per hour when Builders West's contract with its attorneys required it to pay only $350 per hour unless it was awarded fees at the higher rate by the trial court. In a contingent cross-appeal, Builders West asserts that the trial court erred in refusing to award any fees for work performed by attorneys from a particular firm that represented Builders West.

Because Van Dyke's first two issues fail to address portions of the jury charge that support the judgment, we overrule those issues. In addition, we conclude that the trial court did not err in awarding attorneys' fees to Builders West at the rate of $500 per hour because the relevant statute does not limit Builders West's recovery to fees actually incurred. We therefore overrule Van Dyke's third issue and need not address Builders West's contingent cross-appeal. We affirm the trial court's judgment.

## BACKGROUND

In 2008, Van Dyke hired Builders West as general contractor on an extensive home renovation project. The parties' one-page contract stated that Builders West would be paid for "labor and materials plus Contractor's Fee of 20% to cover overhead, supervision, and profit." The contract did not specify the scope of the work to be done or a total price to be paid but instead simply set forth hourly rates for

2

various subcontractors.

The project was to be completed in three phases. After several months of work, Van Dyke requested an estimate for completion of the first two phases, which Builders West provided. Eight months later, Van Dyke refused to pay invoices for work performed in August through November 2009. The unpaid invoices totaled $335,340.65. Van Dyke particularly complained regarding the amount charged for work done by electrical subcontractor Facilities Electric, Inc. ("FEI").

After negotiations proved fruitless, Builders West left the job and ultimately filed suit against Van Dyke for nonpayment of the invoices. Builders West's causes of action included breach of contract, substantial performance, and quantum meruit. Van Dyke counter-sued, alleging breach of contract, violations of the Deceptive Trade Practices Act, and breaches of express and implied warranties.

Key points of contention at trial concerned the nature of the "supervision" component of the contract and the sufficiency of Builders West's performance of that component. Kurt Lobpries, a co-owner of Builders West, testified that he considered five percent of the amount paid under the contract to be for supervision. Day-to-day onsite supervision was actually provided by a carpenter on the job who was paid directly by Van Dyke and not by Builders West. There was evidence, however, that Lobpries acted as project manager, scheduling and coordinating the subcontractors' work, occasionally making onsite inspections, and communicating with the onsite supervisor.

Another significant dispute at trial concerned the quality of the electrical work performed by subcontractor FEI. Van Dyke called an expert witness to testify specifically regarding perceived deficiencies in the electrical work. Builders West defended the electrical work through several witnesses but did not call its own expert witness to testify on this subject.

3

At the conclusion of trial, the trial court submitted a 22-question charge to the jury that contained each of the causes of action listed above, along with various subsidiary issues. Because our disposition of Van Dyke's first two issues turns on the structure of the charge, we explain that structure in some detail.

Builders West's claim for breach of contract was submitted in questions 1, 2, 3, and 6. Question 1 asked whether Van Dyke failed to comply with the parties' one-page agreement. Question 2 was contingent on a "yes" answer to question 1 and inquired whether Van Dyke's failure to comply was excused by a prior failure to comply by Builders West. Question 3 asked whether the estimate Builders West provided regarding completion of phases 1 and 2 effectively modified the parties' agreement. And question 6 was the damages submission for Builders West's breach of contract claim.

Van Dyke's claim for breach of contract was submitted in questions 4, 5, and 9. Question 4 asked whether Builders West failed to comply with the agreement. An instruction under question 4 informed the jury that Builders West was required to perform its obligations under the agreement "in a good and workmanlike manner." As will be discussed in more detail below, it is important to note that question 2—asking whether Van Dyke's failure to comply was excused by Builders West's prior noncompliance—did not contain a similar instruction. Additionally, Van Dyke objected to question 4—but not question 2—on the ground that it failed to instruct the jury regarding Builders West's contractual duty to supervise the work of subcontractors. The trial court overruled the objection. Van Dyke did not object to question 2 on this ground. Question 5 was contingent on a "yes" answer to question 4 and asked whether Builders West's failure to comply was excused by various theories, including waiver, ratification, and acceptance of benefits. Question 9 was the damages submission for Van Dyke's breach of contract claim.

4

Builders West's claim of substantial performance was submitted in questions 7 ("Did Builders West, Inc. substantially perform the Agreement?") and 8 (damages). Its claim of quantum meruit was submitted in questions 10 ("Did Builders West, Inc. perform compensable work for Scott Van Dyke for which it was not compensated?") and 11 (damages). Van Dyke's other claims (DTPA violations and breaches of warranties) were also submitted but play no role in this appeal.

The jury found for Builders West on all claims, found against Van Dyke on his claims and defenses, and found damages to be $321,368.12 as to each of Builders West's claims for breach of contract, substantial performance, and quantum meruit. The trial court subsequently awarded this amount to Builders West as actual damages in the judgment.

Builders West's entitlement to attorneys' fees was tried to the court by agreement. During the litigation, Builders West was represented by lawyers from two different law firms: Rusty Hardin & Associates ("RHA"), with which Builders West had a direct contractual relationship, and Langley & Banack, which was paid by Builders West's insurer. In this phase of the trial, Van Dyke did not contest the reasonableness of the fees requested for RHA's services. Instead, Van Dyke argued that such fees were not necessarily incurred at a rate of $500 per hour because Builders West's contract with RHA only obligated Builders West to pay at the rate of $350 per hour unless the trial court awarded fees at the higher rate. The trial court awarded Builders West fees for the services of RHA calculated at the rate of $500 per hour but did not award any fees for services performed by Langley & Banack.

ANALYSIS

I. **Van Dyke's sufficiency challenge fails because the relevant parts of the charge did not require good and workmanlike performance.**

In his first issue, Van Dyke purports to challenge the legal and factual

5

sufficiency of the evidence to support Builders West's recovery on its claim for breach of contract. We conclude that Van Dyke's challenge fails for three reasons. First, although Van Dyke contends insufficient evidence was presented of good and workmanlike performance, the jury charge regarding this claim did not require that evidence. Second, even if Builders West failed to prove its claim for breach of contract, Van Dyke failed to challenge in his original brief two other jury findings that support the judgment. And third, in any event, Van Dyke's argument does not undermine those other findings because the charge likewise did not require evidence of good and workmanlike performance to make those findings.

### A. The charge questions regarding Builders West's claim for breach of contract did not require good and workmanlike performance.

According to Van Dyke, Builders West could not prevail on its claim that Van Dyke breached the contract by nonpayment because Builders West did not establish through expert testimony that its electrical subcontractor, FEI, performed in a good and workmanlike manner. Van Dyke points out that a party to a contract generally is not permitted to recover for breach unless the party can establish that it tendered performance of its own obligations under the contract or was excused from doing so. *See, e.g., Petroleum Workers Union of the Republic of Mex. v. Gomez*, 503 S.W.3d 9, 39 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (listing elements of cause of action for breach of contract). He further notes that home construction contracts typically are read to include an implied warranty that all work will be completed in a good and workmanlike manner. *See, e.g., Gonzales v. Sw. Olshan Found. Repair Co.*, 400 S.W.3d 52, 56 (Tex. 2013) (explaining that the implied term is a "gap-filler" for when parties have not included their own terms regarding the quality of the work).[1]

---

[1] Van Dyke additionally argues that expert testimony was necessary to aid the jury in

6

Although these statements of the law are generally correct, when a case is tried to a jury and the party complaining on appeal did not object to the charge, the sufficiency of the evidence is measured against the charge actually submitted, not some other law left unidentified in the charge. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Critical Path Res., Inc. v. Cuevas*, No. 14-16-00036-CV, 2018 WL 1532343, at *18, 26 (Tex. App.—Houston [14th Dist.] Mar. 29, 2018, no pet. h.). Here, none of the questions that comprised the submission of Builders West's claim for breach of contract contained a requirement that Builders West prove its subcontractors' work was done in a good and workmanlike manner, and Van Dyke did not object to the absence of such an instruction in these questions.

To prevail on a claim for breach of contract, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant, (2) the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *Petroleum Workers*, 503 S.W.3d at 39. The first element—the existence of a contract—was undisputed in this case. Question 1 asked whether Van Dyke breached the agreement. Question 2, which was contingent on an affirmative finding in response to question 1, addressed Builders West's performance[2] and submitted Van Dyke's defense of prior material breach by

assessing the quality of the electrical work at issue, citing *Schwartz v. City of San Antonio ex rel. City Public Service Board of San Antonio*, No. 04-05-00132-CV, 2006 WL 285989, at *4 (Tex. App.—San Antonio Feb. 8, 2006, pet. denied) (mem. op.). Builders West disagrees. Because we conclude the jury charge did not require evidence that the electrical work was performed in a good and workmanlike manner, we need not address the circumstances in which expert testimony regarding the quality of electrical work is necessary. *See generally FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90-91 (Tex. 2004) (explaining that whether a particular matter requires expert testimony is a question of law reviewed de novo).

[2] The jury also found in response to question 7 that Builders West substantially performed the agreement. Like question 2, question 7 included no instruction that Builders West and its subcontractors were required to perform in a good and workmanlike manner.

7

asking whether Van Dyke's failure to comply was excused by a prior failure to comply by Builders West.[3] Question 6, which was also contingent on an affirmative finding to question 1, asked about damages. As stated, none of these questions instructed the jury that Builders West and its subcontractors were required to perform in a good and workmanlike manner, and Van Dyke did not object regarding the absence of such an instruction.[4] *See generally Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 602 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (discussing preservation of error for charge complaints).

The only question that inquired whether Builders West and its subcontractors performed in a good and workmanlike manner was question 4, which was part of the submission of Van Dyke's claim that Builders West breached the contract. The jury answered "no" in response to question 4. Of course, this failure to find that Builders West and its subcontractors did not perform in a good and workmanlike manner does not amount to an affirmative finding that they did. *E.g., Philadelphia Indemnity Ins. Co. v. White*, 490 S.W.3d 468, 488 (Tex. 2016). But no such affirmative finding was required by the charge questions submitted without objection regarding Builders

---

[3] We note that the organization of the breach-of-contract portions of the charge and the wording of question 2 were not in keeping with the organization and wording recommended in the Texas Pattern Jury Charges. When faced with competing claims of breach, the Pattern Jury Charges recommend asking, in sequence, whether each party failed to comply with the agreement and then, if the jury answers "yes" to both of those questions, asking which party failed to comply first. *See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: Business PJC 101.2 cmt. (2016). Here, as explained in the text, the trial court presented the parties' claims for breach of contract in two distinct sets of questions that do not intersect. Van Dyke did not object to this manner of submission or to the wording of question 2, nor does he specifically complain about them on appeal. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 481 (Tex. 2017) ("[A] defendant must preserve error by objecting when an independent theory of recovery is submitted defectively.").

[4] *Cf.* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: Business PJC 101.2 cmt. (2016) (recommending inclusion of instructions when there is an obligation to perform in a good and workmanlike manner).

8

West's claim that Van Dyke breached the contract by failing to pay.

Question 4 is not related to Builders West's claim that Van Dyke breached the contract for several reasons. To begin with, question 4 is not made contingent upon or otherwise expressly tied to any of the questions concerning Builders West's claim. Furthermore, question 4 does not contain any time element—i.e., it does not ask whether any breach by Builders West occurred *prior to* Van Dyke's breach. In order for any breach by Builders West to have excused a breach by Van Dyke, Builders West's breach must have occurred prior to Van Dyke's breach. *See Petroleum Workers*, 503 S.W.3d at 39. In contrast, question 2 is expressly tied to other questions submitting Builders West's claim that Van Dyke breached the contract, and it contains the requisite time element.

In short, question 4 has no relevance to Builders West's recovery for breach of contract, and question 2 did not require performance to be in a good and workmanlike manner. Because the charge questions submitting Builders West's claim did not include a requirement of good and workmanlike performance, we may not consider that requirement in reviewing the sufficiency of the evidence to support the jury's answers. We therefore reject Van Dyke's argument that the evidence is insufficient because Builders West provided no expert testimony that FEI's work was performed in a good and workmanlike manner.

### B. Van Dyke's opening brief does not challenge the jury's findings for Builders West on its other claims.

Even if Van Dyke were correct that Builders West provided insufficient evidence to support recovery for breach of contract, the judgment would still be supported by the jury's findings on Builders West's substantial performance and quantum meruit claims. Van Dyke did not challenge the jury's affirmative findings on these claims in his opening brief. *See, e.g., Miller v. Debo Homes, LLC*, No. 14-

15-00004-CV, 2016 WL 5399507, at *3 (Tex. App.—Houston [14th Dist.] Sept. 27, 2016, no pet.) (mem. op.) (affirming judgment supported by unchallenged, independent jury finding and on that basis overruling challenge to other jury findings); *Aquarium Env't's, Inc. v. Elgohary*, No. 01–12–01169–CV, 2014 WL 1778266, at *3 (Tex. App.—Houston [1st Dist.] May 1, 2014, pet. denied) (mem. op.) (holding any error in submitting DTPA claim was harmless where appellant did not challenge jury finding on breach of contract, which was an independent ground supporting liability and damages); *see also Melartin v. CR & R, Inc.*, No. 14-05-00519-CV, 2009 WL 972484, at *1 n.1 (Tex. App.—Houston [14th Dist.] Mar. 24, 2009, no pet.) (mem. op.) ("We do not consider arguments raised for the first time in a reply brief."). As stated above, the jury found the same amount of damages for all three claims. These unchallenged findings therefore support the judgment. *See, e.g., Miller*, 2016 WL 5399507, at *3; *Aquarium Env't's*, 2014 WL 1778266, at *3.

**C.     The charge questions regarding Builders West's other claims did not require good and workmanlike performance.**

In his reply brief, Van Dyke asserts that his arguments regarding Builders West's claim for breach of contract also apply to its claims regarding substantial performance and quantum meruit. In support, he cites authority explaining that briefs should be construed liberally and the statement of an issue should be treated as covering every subsidiary question fairly included. *See* Tex. R. App. P. 38.1(f); *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012). Although we agree with these premises, we disagree that a challenge to Builders West's success on its substantial performance and quantum meruit claims is fairly included in Van Dyke's argument in his opening brief that "Builders West Could Not Prevail On Its Contract Claim . . . ." Yet even if we were to apply Van Dyke's arguments in his opening brief to the jury's substantial performance and quantum meruit findings, Van Dyke still could not obtain reversal of the judgment.

10

As set forth above, Van Dyke's argument under his first issue is that Builders West could not prevail on its claim for breach of contract because it did not provide expert evidence that FEI performed in a good and workmanlike manner. Neither the jury question regarding substantial performance (question 7) nor the question regarding quantum meruit (question 10) required proof of performance in a good and workmanlike manner, and Van Dyke did not object to these omissions in the trial court. Therefore, evidence of good and workmanlike performance is not necessary to support the jury's answers to those questions. *See Osterberg*, 12 S.W.3d at 55 ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge"); *see also Critical Path*, 2018 WL 1532343, at *18, 26. For the foregoing reasons, we overrule Van Dyke's first issue.

## II. Van Dyke's complaint of charge error in refusing to give an instruction does not affect the parts of the charge supporting the judgment.

In his second issue, Van Dyke contends that the trial court erred in refusing to instruct the jury in question 4 regarding Builders West's contractual duty to supervise the work of its subcontractors.[5] Van Dyke asserts that because the trial court instructed the jury in question 4 on the implied requirement that Builders West perform in a good and workmanlike manner but did not instruct the jury regarding the express obligation to supervise, it incorrectly suggested to the jury that poor work quality was the only permissible basis for finding that Builders West breached the contract.

As explained in detail above, question 4 was part of the series of questions that submitted Van Dyke's own claim that Builders West breached the contract. In

---

[5] As mentioned, the parties' contract stated that Builders West was to be paid for "labor and materials plus Contractor's Fee of 20% to cover overhead, *supervision*, and profit" (emphasis added).

a post-submission letter brief, Van Dyke clarified that he is not appealing the portion of the judgment ordering that he take nothing on his affirmative causes of action; he is only appealing the part of the judgment awarding damages and attorneys' fees to Builders West. Question 4 is not material to the award of damages and attorneys' fees to Builders West. Accordingly, Van Dyke has expressly waived his second issue. *Cf. Energy Maint. Servs. Gp. I, LLC v. Sandt*, 401 S.W.3d 204, 221 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (giving effect to jury findings where appellants conceded in reply brief that they did not challenge the findings in their opening brief).

We further note that the arguments Van Dyke makes in his second issue cannot be read as applying to question 2 of the jury charge, which submitted Van Dyke's defense that Builders West had previously breached the contract. Van Dyke did not object to question 2 on this basis in the trial court, as he did to question 4, and he did not request that an instruction on supervision accompany question 2, as he did for question 4. *See, e.g., Bayer Corp.*, 214 S.W.3d at 602 (discussing preservation of error for charge complaints). Moreover, question 2 did not instruct the jury regarding good and workmanlike performance, so it did not limit the bases on which the jury could have found a breach by Builders West. We overrule Van Dyke's second issue.

### III. Builders West's recovery of attorneys' fees is not limited to the amount incurred.

In his third issue, Van Dyke challenges the trial court's award of attorneys' fees to Builders West at the rate of $500 per hour. In Texas, attorney's fees are recoverable in litigation only if expressly authorized by a contract or statute. *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013). In this case, Builders West sought fees pursuant to chapter 38 of the Texas Civil Practice and Remedies Code. Tex. Civ.

12

Prac. & Rem. Code § 38.001-.006. Section 38.001 of that chapter provides, in relevant part, that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: (1) rendered services; (2) performed labor; (3) furnished material; . . . or (8) an oral or written contract." *Id.* § 38.001. An award of attorney's fees must be supported by evidence that the fees are reasonable and necessary for the prosecution of the suit. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

As mentioned above, Van Dyke does not contest the reasonableness of the fees awarded and he does not contest the necessity of the services performed; instead, he specifically complains only that Builders West did not actually incur fees at the rate of $500 per hour. In doing so, Van Dyke misreads the requirements for an award of attorneys' fees under Chapter 38.

Van Dyke's argument is premised on language in the fee agreement between Builders West and RHA, one of the law firms representing it. This agreement contains the following paragraph explaining the hourly rate to be charged:

> Even though we are charging $500 per hour for our attorney time, we are agreeing to seek payment from Builders West for only $350 per hour. We will seek to have the jury and/or judge award Builders West the entire $500 per hour fee from Scott Van Dyke. If and when Builders West is awarded and paid more than $350 per hour for our legal fees, Builders West agrees to pay to RH&A any award for RH&A fees over $350 per hour, and $350 per hour will be apportioned to Builders West to make the company whole for those amounts already paid to RH&A.

According to Van Dyke, he should not be required to pay fees at the $500 rate instead of the $350 rate because Builders West was not obligated to pay the higher rate unless it first received payment from Van Dyke for the higher amount. In other words, Van Dyke insists that because Builders West never incurred fees at the higher rate, it is only entitled to be awarded fees calculated at the lower rate.

13

The parties do not cite, and we have not discovered, any Texas cases addressing a request for attorneys' fees under a contract identical to the one presented here. In many contexts, however, Texas courts have held that a party entitled to attorneys' fees need not show that the fees requested were actually incurred unless the statute authorizing a fee award requires such proof. *See, e.g., Gluck v. Hadlock*, No. 02–09–00411–CV, 2011 WL 944439, at *5 (Tex. App.—Fort Worth March 17, 2011, no pet.) (mem. op.) (affirming award of fees even though attorney agreed not to charge client); *In re Estate of Johnson*, 340 S.W.3d 769, 787 (Tex. App.—San Antonio 2011, pet. denied) (holding party could recover fees even though its fees had been paid by a third-party trust); *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 517-21 (Tex. App.—Fort Worth 2009, no pet.) (affirming award under chapter 38 of in-house counsel fees based on market value and stating "proof of fees actually incurred or paid are not prerequisites to the recovery of attorney's fees in Texas"); *Brown v. Comm'n for Lawyer Discipline*, 980 S.W.2d 675, 683–84 (Tex. App.—San Antonio 1998, no writ) (holding state bar represented by private lawyers on a pro bono basis may recover reasonable attorneys' fees); *Beckstrom v. Gilmore*, 886 S.W.2d 845, 847 (Tex. App.—Eastland 1994, writ denied) (holding attorney representing himself pro se may recover fees under chapter 38); *Tuberquia v. Jamison & Harris*, No. A14–91–00055–CV, 1991 WL 260344, at *2 (Tex. App.—Houston [14th Dist.] Dec. 12, 1991, no writ) (not designated for publication) (holding law firm represented by one of its own attorneys was entitled to recover attorney's fees for the time and effort expended); *cf. Cruz v. Van Sickle*, 452 S.W.3d 503, 524 & n.36 (Tex. App.—Dallas 2014, pet. denied) (distinguishing *Gluck*, *AMX*, *Brown*, and *Tuberquia* because statute at issue expressly required that fees be incurred).

In keeping with this precedent, we reject Van Dyke's assertion that Builders

West must have actually incurred fees at the higher rate in order to recover fees at that rate. Chapter 38 contains no such requirement.[6] Van Dyke also argues as a policy matter that permitting recovery under fee contracts such as that between Builders West and RHA would promote fee inflation and untether fees from market realities. But potential excesses in a contract such as this are held in check by the same requirements that have always held awards of attorney's fees in check under Chapter 38: the fees must be proven reasonable and necessary for the prosecution of the suit. *See Stewart Title*, 822 S.W.2d at 10; *Trevino v. City of Pearland*, 531 S.W.3d 290, 297 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) ("[W]e cannot agree that the mere fact that a party and a lawyer have agreed to a contingent fee means that the fee arrangement is in and of itself reasonable."); *Classic C Homes, Inc. v. Homeowners Mgmt. Enterprises, Inc.*, No. 02-14-00243-CV, 2015 WL 5461517, at *5 (Tex. App.—Fort Worth Sept. 17, 2015, no pet.) (making same point in case where fees were sought under Chapter 38). If Van Dyke deems those statutory checks insufficient, his recourse is to the Legislature, not this Court.

Here, Van Dyke conceded that fees of $500 per hour were reasonable and that the work performed was necessary. *See generally First Bank v. DTSG, Ltd.*, 472 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2015) (assessing evidence for a reasonable fee for the necessary services of party's attorneys), *rev'd on other grounds sub nom. First Bank v. Brumitt*, 519 S.W.3d 95 (Tex. 2017); *AMX Enters.*, 283 S.W.3d at 520 (same). Because nothing more was required to support the trial

---

[6] We further note that because attorney's fees under chapter 38 are not required to be incurred before being awarded, the trial court's statement in the judgment that the fees were "incurred" is mere surplusage. *See, e.g., Prime Tree & Landscaping Servs. v. American Servs. Co.*, No. 01-09-00779-CV, 2011 WL 947004, at *4 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (explaining that harmless surplusage does not affect validity of judgment).

court's fee award, we overrule Van Dyke's third issue.

## CONCLUSION

Having overruled each of Van Dyke's issues, we need not reach Builders West's contingent cross-appeal. *See* Tex. R. App. P. 47.1. We affirm the trial court's judgment.


/s/    J. Brett Busby
        Justice


Panel consists of Justices Jamison, Busby, and Brown.