

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00109-CV

**NEC NETWORKS, LLC** d/b/a CaptureRx,
Appellant

v.

Brooke **GILMARTIN**, Independent Court Administrator of the Estate of J. Edward Charles
Gilmartin, Deceased,
Appellee

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2018PC3985
Honorable Oscar J. Kazen, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: November 29, 2023

AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED

Appellant NEC Networks, LLC d/b/a CaptureRx challenges the trial court's denial of its

motion to dismiss under the Texas Citizens' Participation Act. We affirm the trial court's order in

part, reverse it in part, and render judgment dismissing appellee Brooke Gilmartin's counterclaim

for intentional infliction of emotional distress. We remand this cause for a determination of

CaptureRx's court costs and reasonable attorney's fees incurred in defending against Brooke's

intentional infliction counterclaim.

**BACKGROUND**

In 2000, Edward "Jake" Gilmartin and Christopher Hotchkiss co-founded CaptureRx. In 2016, Jake married Brooke. In 2018, Jake died from a self-inflicted gunshot wound. Brooke was eventually appointed independent administrator of Jake's estate.

This dispute revolves around the parties' competing claims to Jake's interest in CaptureRx. After Jake died, CaptureRx contended that a 2012 "Company Agreement" he had signed entitled it to purchase his interest in the company. CaptureRx valued Jake's interest at $356,764.20 under the terms of the Company Agreement, and it made an offer in that amount to Jake's estate. Brooke, as the independent administrator of Jake's estate, declined CaptureRx's offer because she believed it did not fairly value Jake's interest.

At some point after it made the initial offer, CaptureRx discovered a 2014 "Profits Interests Agreement Letter" that Jake purportedly signed and which CaptureRx contended was relevant to the valuation. Both CaptureRx and Jake's estate subsequently hired their own valuation appraisers to review the relevant documents. CaptureRx's valuation appraiser concluded that under the terms of the Profits Interests Agreement Letter and the Company Agreement, Jake's interest had no monetary worth. Based on this valuation, CaptureRx offered Jake's estate $10,000 "in a gesture of goodwill[.]" The valuation appraiser hired by Jake's estate also considered both the Company Agreement and the Profits Interests Agreement Letter, but he concluded Jake's interest was worth between $19,157,000 and $33,900,000.

During the valuation dispute, Hotchkiss—who was CaptureRx's CEO at that time—openly denigrated Brooke in front of CaptureRx's employees and executives. He referred to her as "a slut, a cunt, a prostitute, a bitch," expressed a desire to do physical harm to her, and asked CaptureRx's then-general counsel, Jose Padilla, "to find someone . . . that could rape" her. Hotchkiss told

"everyone" at CaptureRx that he "wanted to make sure that [Brooke] got nothing" from Jake's interest in the company.

On August 12, 2019, the board of CaptureRx accepted Hotchkiss's resignation, and Padilla and another individual took over as co-CEOs of the company. Two weeks later, on August 26, 2019, CaptureRx sued Brooke in her individual capacity for breach of contract, money had and received, and claims under the Theft Liability Act. CaptureRx also asserted the same claims against Brooke "as assignee" of Jake's interest. CaptureRx filed its claims against Brooke in Kerr County district court.

In her capacity as independent administrator of Jake's estate, Brooke filed her own lawsuit against CaptureRx in Bexar County statutory probate court. CaptureRx's Kerr County claims were eventually transferred by agreement to the Bexar County probate court, and the lawsuits were consolidated. Multiple discovery disputes that are not directly relevant to this appeal ensued, and CaptureRx changed attorneys several times. At some point during this litigation, Hotchkiss rejoined CaptureRx as CEO, and he made representations on CaptureRx's behalf during a June 2022 hearing before the probate court.

On August 15, 2022, Brooke, acting "individually and allegedly as assignee," sought sanctions against CaptureRx. Brooke alleged CaptureRx's lawsuit against her "ha[d] no basis in fact or law [and] was brought in bad faith, for an improper purpose and maliciously[.]" In her individual capacity, she also filed a counterclaim against CaptureRx for intentional infliction of emotional distress. In support of both claims, Brooke argued that CaptureRx initiated litigation against her while she "was in a vulnerable and fragile mental state" after Jake's suicide because it wanted to intimidate her into selling Jake's interest for an unfairly low price. Shortly after Brooke filed her counterclaim, CaptureRx voluntarily non-suited the claims it had asserted against her in her individual capacity.

On October 14, 2022, CaptureRx filed a motion under the TCPA to dismiss Brooke's counterclaim and request for sanctions. After a hearing, the trial court denied the TCPA motion by operation of law. CaptureRx then timely filed this appeal.

## ANALYSIS

In six issues we construe as three, CaptureRx argues the trial court erred by denying its TCPA motion because: (1) the TCPA applied to Brooke's claims; (2) Brooke did not present prima facie evidence to support her claims; and (3) CaptureRx was entitled to judgment as a matter of law on Brooke's claims.

### *Did CaptureRx Bring Its Appeal Against the Wrong Party?*

Before turning to the merits of the trial court's ruling on CaptureRx's TCPA motion, we consider Brooke's assertion that CaptureRx brought its appeal against the wrong party. Brooke notes that CaptureRx's docketing statement, motions for extension of time, and brief identified "Brooke Gilmartin as the Independent Administrator of the Estate of Edward J. Gilmartin" as the appellee in this dispute. She further notes that none of CaptureRx's appellate filings identify her as a party in her individual capacity. Because "[t]he errors asserted by CaptureRx in this appeal could only impact" her in her individual capacity, Brooke argues this appeal "should be summarily dismissed[.]" We decline to interpret our jurisdiction so narrowly.

"The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from." TEX. R. APP. P. 25.1. It is undisputed that Brooke was a party to the "order appealed from" in her individual capacity— CaptureRx appealed the order denying its motion to dismiss the counterclaims Brooke asserted against it in her individual capacity. CaptureRx's notice of appeal was therefore effective to invoke this court's jurisdiction over her in that capacity. *See id.* Accordingly, we decline to dismiss this appeal.

***CaptureRx's TCPA Motion***

*Standard of Review and Applicable Law*

We review a trial court's denial of a TCPA motion to dismiss de novo. *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.—San Antonio 2018, pet. denied). In reviewing a ruling on a TCPA motion, "[w]e view the pleadings and evidence in the light most favorable to the nonmovant." *Id.*

A motion to dismiss under the TCPA is subject to a three-part analysis. First, the movant must demonstrate that the respondent's "legal action is based on or is in response to [the movant's] exercise of the right of free speech, right to petition, or right of association[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). "When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). If the movant shows the TCPA applies, the burden shifts to the respondent to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). If the respondent establishes its prima facie case, the burden shifts back to the movant to "establish[] an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

*Application*

A.      Brooke's intentional infliction of emotional distress counterclaim

The TCPA's definition of "legal action" expressly includes counterclaims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6). Brooke's live petition alleged that her intentional infliction of emotional distress counterclaim arose from CaptureRx's filing of a lawsuit against her. Because filing a lawsuit involves "a communication in or pertaining to . . . a judicial proceeding," that action falls within the TCPA's definition of "[e]xercise of the right to petition." *See id.*

§ 27.001(4)(A)(i). Brooke's live petition therefore showed on its face that her counterclaim was "based on" or "in response to" CaptureRx's exercise of a right protected by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a); *Hersh*, 526 S.W.3d at 467. Accordingly, CaptureRx met its burden under the first prong of the TCPA analysis as to that claim.

The second prong of the TCPA analysis asks whether Brooke established "by clear and specific evidence a prima facie case for each essential element of" her counterclaim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). The TCPA does not define "clear and specific evidence." *See id.*; *In re Lipsky*, 460 S.W.3d 579, 588 (Tex. 2015). However, this evidentiary standard neither "impose[s] a higher burden of proof than that required of the plaintiff at trial" nor "require[s] direct evidence of each essential element of the underlying claim to avoid dismissal." *In re Lipsky*, 460 S.W.3d at 591. "Instead, a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* The TCPA also does not define "prima facie case," but that term "has a traditional legal meaning." *Id.* at 590. A TCPA respondent establishes a prima facie case by presenting "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (internal quotation marks omitted).

"To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). To satisfy the required elements of an intentional infliction of emotional distress claim, the conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 215–16 (Tex. 1999) (internal quotation marks omitted); *see also Elkins*, 553 S.W.3d at 609–10.

The Texas Supreme Court has described the required elements of an intentional infliction claim as "exacting." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 (Tex. 2005). "Meritorious claims for intentional infliction of emotional distress are relatively rare because 'most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous.'" *Walgreens v. McKenzie*, 676 S.W.3d 170, 178 (Tex. App.—Houston [14th Dist.] 2023, no pet. h.) (quoting *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)). Conduct may be "callous, meddlesome, mean-spirited, officious, overbearing, and vindictive" and still fall short of the high threshold required to support a claim for intentional infliction of emotional distress. *See Creditwatch*, 157 S.W.3d at 817–18.

Here, Brooke argued that CaptureRx's decision to sue her in her individual capacity was extreme and outrageous because: (1) CaptureRx sued her less than a year after Jake's suicide; (2) the lawsuit was part of a scheme to take advantage of her vulnerable state to intimidate her into selling Jake's 20% interest for an unfairly low price; and (3) CaptureRx knew there was no legal or factual basis to assert its claims against her individually. She further argued that CaptureRx's decision to sue her in her individual capacity must be viewed in light of Hotchkiss's "extreme animosity" toward her, and she presented evidence of that animosity.

We are required to view the pleadings and evidence in the light most favorable to Brooke. *See, e.g.*, *Elkins*, 553 S.W.3d at 603. We note, however, that Brooke has not argued that CaptureRx's claims against her in her *representative* capacity—which were identical to the claims it asserted against her individually—were tortious or otherwise procedurally wrongful.[1] Stated differently, Brooke has not disputed that she was a proper defendant in her representative capacity. Furthermore, while Brooke argued that Padilla "had a plan to ensure that CaptureRx paid Brooke

---

[1] Brooke has challenged the substantive merits of CaptureRx's claims against her in her representative capacity, and we express no opinion on the merits of those claims or Brooke's defenses against them.

the lowest amount possible," she has not argued or presented any evidence that this plan involved suing Brooke in her individual capacity. Under these unique circumstances, even if we assume CaptureRx's initial choice to sue Brooke in her individual capacity instead of in her representative capacity was wrongful, we do not believe a reasonable factfinder could conclude that choice was so extreme and outrageous "as to go beyond all possible bounds of decency." *See Brewerton*, 997 S.W.2d at 215–16; *see also Creditwatch*, 157 S.W.3d at 818 (noting that even "heinous" acts "will rarely have merit as intentional infliction claims"); *Elkins*, 553 S.W.3d at 609. Accordingly, we must conclude that Brooke did not establish a prima facie case for this essential element of her intentional infliction counterclaim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *In re Lipsky*, 460 S.W.3d at 590.

For these reasons, we reverse the trial court's order as to Brooke's intentional infliction of emotional distress counterclaim and render judgment dismissing that counterclaim. We also remand this cause for a determination of CaptureRx's "court costs and reasonable attorney's fees incurred in defending against" that counterclaim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1). Based on our resolution of this issue, we need not consider CaptureRx's contention that it satisfied its burden on the third prong of the TCPA analysis. *See* TEX. R. APP. P. 47.1.

### B. Brooke's request for sanctions

#### 1. The TCPA applied to Brooke's request for sanctions.

CaptureRx also sought a TCPA dismissal of Brooke's request for monetary sanctions. That request was a "legal action" as defined by the TCPA. *See KB Home Lone Star Inc. v. Gordon*, 629 S.W.3d 649, 655–57 (Tex. App.—San Antonio 2021, no pet.). And, like Brooke's intentional infliction counterclaim, her petition showed on its face that her request for sanctions was based on CaptureRx's exercise of the right to petition. *See* TEX. CIV. PRAC. & REM. CODE

§§ 27.001(4)(A)(i), 27.003(a). CaptureRx therefore met its burden to show the TCPA applied to that request. *See Hersh*, 526 S.W.3d at 467.

> 2. Brooke presented prima facie evidence of each required element of her claim for sanctions.

Brooke's live petition sought sanctions under Texas Rule of Civil Procedure 13. A trial court may impose Rule 13 sanctions on an attorney who signs a filing, a represented party, or both. TEX. R. CIV. P. 13. "Rule 13 precludes a signatory from signing any motion that is (1) groundless and (2) brought in bad faith or for the purpose of harassment." *KB Home Lone Star*, 629 S.W.3d at 658. Rule 13's first prong requires the party seeking sanctions to establish that the challenged filing lacked any basis in law or fact. *Id.*; TEX. R. CIV. P. 13. Rule 13's second prong—a showing that a pleading or motion was filed in bad faith—"entails more than simply bad judgment or negligence; rather, it is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *In re Estate of Aguilar*, 492 S.W.3d 807, 813–14 (Tex. App.—San Antonio 2016, pet. denied) (internal quotation marks omitted). As explained above, Brooke was required to establish a prima facie case of both these elements to avoid a TCPA dismissal. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *In re Lipsky*, 460 S.W.3d at 590.

CaptureRx asserted several claims against Brooke individually, including breach of contract. To prevail on its breach of contract claim, CaptureRx was required to establish, inter alia, that "a valid contract existed between the plaintiff and the defendant"—i.e., that a valid contract existed between CaptureRx and Brooke *in her individual capacity*. *See, e.g.*, *Van Dyke v. Builders W., Inc.*, 565 S.W.3d 336, 342 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *cf. Elizondo v. Tex. Nat. Res. Conservation Comm'n*, 974 S.W.2d 928, 931 (Tex. App.—Austin 1998, no pet.) (individual acting in her individual capacity "is, in law, not the same person" as that individual acting in her representative capacity). The evidence presented below showed that Brooke was not

a signatory to the Company Agreement or the Profits Interests Agreement Letter in any capacity. This evidence, if uncontroverted, would support a rational inference that CaptureRx's breach of contract claim against Brooke in her individual capacity had no basis in law or fact and was therefore groundless as that term is defined by Rule 13. *See* TEX. R. CIV. P. 13; *Van Dyke*, 565 S.W.3d at 342; *see also In re Lipsky*, 460 S.W.3d at 590. Accordingly, the trial court did not err by concluding Brooke satisfied her prima facie burden on the first element of her Rule 13 sanctions claim.

On the second prong of her Rule 13 claim—that CaptureRx sued her in her individual capacity in bad faith or for the purpose of harassment—Brooke alleged that CaptureRx asserted meritless claims against her to intimidate her into selling Jake's interest for less than its fair value. She also alleged that CaptureRx "authorized, acquiesced in and/or ratified" the actions of its on-again off-again CEO, Hotchkiss. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a) ("In determining whether a legal action is subject to or should be dismissed under [the TCPA], the court shall consider the pleadings[.]"); *In re Lipsky*, 460 S.W.3d at 587 (same). As evidentiary support, Brooke presented deposition testimony from Padilla, who was CaptureRx's general counsel and co-CEO when it filed suit against her individually and was one of the people who authorized the filing of the lawsuit. Padilla testified that Hotchkiss repeatedly and openly vilified Brooke in front of Padilla and other CaptureRx executives, blamed Brooke for Jake's death, and "told everyone, make sure [Brooke] gets nothing" from Jake's interest in the company. *See In re Estate of Aguilar*, 492 S.W.3d at 814 ("[H]arassment focuses on the pleader's intent to annoy, alarm, and abuse another person through the pleadings.") (internal quotation marks omitted). Padilla also explained that he and others at CaptureRx, including the outside counsel who signed the petition asserting claims against Brooke in her individual capacity, were "scared" of Hotchkiss due to his erratic

behavior. Moreover, it is undisputed that Hotchkiss did not depart his leadership role at CaptureRx until two weeks before the company sued Brooke.

CaptureRx correctly notes that Padilla testified that he and CaptureRx took actions intended to insulate the dispute with Jake's estate from Hotchkiss's influence. However, at this stage of the litigation, the trial court was required to consider the pleadings and evidence in the light most favorable to Brooke. *See, e.g.*, *Elkins*, 553 S.W.3d at 603. When considered under the proper standard of review, the pleadings and evidence before the trial court would permit a factfinder to rationally infer that CaptureRx's individual claims against Brooke were motivated by Hotchkiss's malice against her and were therefore filed in bad faith or for the purpose of harassment. *See In re Lipsky*, 460 S.W.3d at 590; *In re Estate of Aguilar*, 492 S.W.3d at 813–14. Consequently, Brooke met her burden to establish a prima facie case of each required element of her claim for Rule 13 sanctions. TEX. CIV. PRAC. & REM. CODE § 27.005(c).

> 3. CaptureRx did not establish that it was entitled to judgment as a matter of law on Brooke's request for sanctions.

In its TCPA motion, CaptureRx argued that even if Brooke met her prima facie burden on her claim for sanctions, it was entitled to judgment as a matter of law on that claim for several reasons. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d). First, it claimed that it believed in good faith that Jake's "outstanding debt, and/or a community portion thereof, transferred to" Brooke upon Jake's death. While Jake's portion of the community estate may have been liable for his debts,[2] *see* TEX. EST. CODE ANN. § 101.052, Brooke herself was not individually liable for Jake's debts unless: (1) she acted as Jake's agent; or (2) Jake incurred the debt in question "for

---

[2] CaptureRx's own evidence showed that Jake signed the Company Agreement in 2014 but did not marry Brooke until 2016. *See* TEX. FAM. CODE ANN. § 3.001(1) (defining separate property as, inter alia, "the property owned or claimed by the spouse before marriage"). CaptureRx did not attempt to show what portion, if any, of Jake's interest in CaptureRx was community property. *See id.*

necessaries[.]" TEX. FAM. CODE ANN. § 3.201(a). CaptureRx did not attempt to show that either was true here. *See Martinek Grain & Bins, Inc. v. Bulldog Farms, Inc.*, 366 S.W.3d 800, 808 (Tex. App.—Dallas 2012, no pet.) (holding wife was not personally liable for her deceased husband's debts).

Next, CaptureRx argued Brooke was personally bound by the terms of the Company Agreement because the agreement defined her as an "assignee" of Jake's membership interest. CaptureRx also argued Brooke should be bound by the terms of the Company Agreement because she sought to benefit from it. CaptureRx did not, however, point to any portion of the Company Agreement that made an assignee individually liable for the debts of her deceased assignor. Nor did it present any evidence that Brooke sought benefits under the agreement in her individual capacity as opposed to in her capacity as the administrator of Jake's estate. *See Elizondo*, 974 S.W.2d at 931.

Finally, CaptureRx argued the evidence showed Hotchkiss resigned as its CEO approximately two weeks before it filed its lawsuit against Brooke. On appeal, CaptureRx contends Brooke "never made a connection between her feud with" Hotchkiss and CaptureRx's decision to sue her in her individual capacity. This appears to be a contention that Hotchkiss's undisputed animus toward Brooke cannot properly be imputed to CaptureRx for sanctions purposes. However, Padilla testified that Hotchkiss resigned "about seven or eight times" during Padilla's approximately one-year tenure at the company, and that the resignation CaptureRx relies on here "was just the first time that the board actually accepted it." Moreover, the trial court took judicial notice of the entire record of this case, and that record showed Hotchkiss reclaimed his position as CEO during this litigation. Hotchkiss also personally appeared in the trial court during a June 24,

2022 hearing, where he made representations on CaptureRx's behalf.[3] CaptureRx itself identified Hotchkiss as its "corporate representative" during a September 21, 2022 hearing that occurred approximately one month after Brooke filed her counterclaim and request for sanctions. And, as explained above, Brooke presented evidence that when Hotchkiss was CEO, he made it clear to "everyone" at CaptureRx that he did not want Brooke to reap any benefit from Jake's interest in the company. Under these circumstances, reasonable people could disagree about whether Hotchkiss's short-lived resignation precluded his undisputed vitriol toward Brooke from being imputed to CaptureRx for sanctions purposes. *See, e.g.*, *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (orig. proceeding) (per curiam) (corporations act through human agents); *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (TCPA respondent may rely on circumstantial evidence that supports reasonable inference).

To obtain a dismissal of Brooke's sanctions claim under the third prong of the TCPA, CaptureRx was required to conclusively establish its entitlement to judgment on that claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Graves v. Evangelista-Ysasaga*, No. 14-22-00137-CV, 2023 WL 370589, at *6 (Tex. App.—Houston [14th Dist.] Jan. 24, 2023, pet. denied) (mem. op.). CaptureRx argues its claims "were warranted by evidence known by CaptureRx at the time it filed its pleadings," and it points to evidence that arguably raised a fact issue on that point. However, evidence that merely raises a fact issue will not support a dismissal under the third prong of the TCPA. *See Graves*, 2023 WL 370589, at *6; *cf. City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). The trial court did not err by denying CaptureRx's TCPA motion as to Brooke's claim for sanctions. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d).

---

[3] The June 24, 2022 hearing occurred at a time when CaptureRx did not have an attorney in this litigation. Hotchkiss told the trial court during that hearing that he had not yet been able to locate new counsel for CaptureRx.

**CONCLUSION**

We reverse the trial court's denial of CaptureRx's TCPA motion as to Brooke's intentional infliction of emotional distress counterclaim and render judgment dismissing that counterclaim. We remand this cause for a determination of CaptureRx's court costs and reasonable attorney's fees incurred in defending against Brooke's intentional infliction counterclaim. We affirm the trial court's denial of CaptureRx's TCPA motion as to Brooke's request for sanctions.

Beth Watkins, Justice