# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00358-CV

---

**Diamond Hydraulics, Inc., Appellant**

**v.**

**GAC Equipment, LLC d/b/a Austin Crane Service, Appellee**

---

### FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 19-1077-C425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This is a dispute over Diamond Hydraulics' (Diamond) repair of a hydraulic crane owned by GAC Equipment, LLC d/b/a Austin Crane Service (Austin). Dissatisfied with the repair, Austin sued Diamond for breach of contract and breach of express and implied warranties. A jury found for Austin and awarded damages. We affirm.

### BACKGROUND

Austin provides crane rental services. In June 2018, the hydraulic cylinder on one of its cranes started leaking hydraulic fluid during a job. Bryan Simpson, Austin's general manager, contacted Diamond to repair the cylinder. Instead of repairing and resealing the cylinder, Diamond recommended rebuilding the barrel.[1] Diamond sent a work order to Austin offering to rebuild it for $26,988.76. The work order did not specify the type or strength of

---

[1] A hydraulic cylinder has three main parts: a rod, a barrel, and spherical bearings.

material to be used or include an express warranty. Simpson accepted the offer and paid Diamond $26,988.76. Diamond rebuilt the cylinder using a106 B/C carbon grade steel.

Austin had the rebuilt cylinder reinstalled on the crane and sent it back into service. The following year, the cylinder bent while the crane was lifting an airport bridge.[2]



Simpson emailed Diamond the following day that Austin would not release the cylinder and wanted "to know how [Diamond] would like to proceed" with purchasing a replacement cylinder from the original equipment manufacturer (OEM). William Gibson (a co-owner of Diamond) responded that Diamond needed to perform a failure analysis on the bent cylinder before purchasing a new one.

During that same exchange of emails, Gibson represented that Diamond had rebuilt the cylinder with "the same material" as the OEM. Austin hired metallurgist Tony Studer

---

[2] We take this image, which the district court admitted as one of Austin's exhibits, from Austin's brief.

to determine if the rebuilt cylinder was made of the same material used by the OEM. Studer reported that Diamond used a106 B/C carbon grade steel in the rebuild, which is significantly weaker.

Austin sued Diamond for breach of contract and breach of express and implied warranties. Specifically, Austin alleged that Diamond breached the repair contract by failing to repair the cylinder "with materials that were of sufficient quality or strength to utilize the cylinder for its intended purpose." And by doing so, Diamond allegedly breached an express warranty that "all repaired components are brought back up to OEM standards" and an implied warranty that it would perform the repairs in a good and workmanlike manner.

Diamond retained KnightHawk Engineering to determine why the cylinder failed. Dr. Kevin Macfarlan and other personnel from KnightHawk, including Dr. Michael Hoerner, conducted tests on the cylinder and prepared a report. Dr. Macfarlan concluded in his report that the cylinder bent because the "spherical plain bearing at the top of the hydraulic rod" seized. The bearing seizure was the result of damage caused by repeated overloading of the crane and poor maintenance. Diamond's use of a "A106 Grade B/C did not contribute in any way to the failure of the hydraulic cylinder." Diamond designated Dr. Macfarlan as its testifying expert on the cause of the bend. Austin took Dr. Macfarlan's deposition in October 2021.

Studer prepared a "rebuttal letter" criticizing Dr. Macfarlan's report. According to Studer, the cylinder bent because the weak steel used in the rebuild could not withstand the stress of lifting the 55,000-pound bridge. He relied in part on pi tape measurements of the barrel showing that it had swelled and calculations of the "hoop stress" on the cylinder at the time of

the bend.[3]  The stress on the cylinder wall exceeded the yield strength of the carbon steel and caused the barrel to swell, resulting in the bend.

The case was set for a jury trial on October 3, 2022.  On August 22, 2022, KnightHawk informed Diamond's counsel that Dr. Macfarlan had accepted a position in Ohio with another company and was no longer available to testify.  Diamond's counsel contacted Austin's counsel to discuss substituting Dr. Hoerner for Dr. Macfarlan as a testifying expert, but Austin's counsel opposed the request.

On September 2, 2022—952 days after the deadline to designate experts expired and 31 days before the trial date—Diamond served Austin with a supplemental disclosure designating Dr. Hoerner as a testifying expert in place of Dr. Macfarlan and a motion for leave. Diamond argued that there was good cause to permit the substitution and that permitting Dr. Hoerner's testimony would not unfairly surprise or prejudice Austin.  *See* Tex. R. Civ. P. 193.6(a) (providing for automatic exclusion of evidence that was not timely disclosed unless court finds good cause or that opposing party would not suffer unfair surprise or prejudice). Diamond argued that Dr. Macfarlan's withdrawal was good cause and that permitting Dr. Hoerner to testify would not cause unfair surprise or prejudice because Austin knew Dr. Hoerner was involved in testing the cylinder.  Further, Dr. Hoerner had reviewed the same evidence as Dr. Macfarlan and reached the same opinion.  Diamond attached an affidavit from Dr. Macfarlan confirming that he is "not available to testify as an expert witness" in this case,

---

[3] Studer explained that a "pi tape" is a "calibrated piece of tape, it's a piece of metal that has marking on it, you wrap it around the diameter" of the object.  Dr. Macfarlan explained in his deposition that "hoop stress" refers to the stress on a vessel when it is under pressure, "like the barrel in this case when it's pumped full of hydraulic fluid."

4

which was "set for a jury trial starting October 3, 2022." The district court denied Diamond's motion and its request for a continuance.[4]

The parties tried the case to a jury in October 2022. The district court preadmitted several exhibits, including Studer's report, a redacted version of Dr. Macfarlan's report, and photographs of the crane, including several of the disassembled bearings. The redacted report included extensive photographs and measurements of the cylinder and its components. Austin presented the testimony of Simpson; Studer; Dr. Jim Wiethorn; Eric Fidler, the corporate representative of Grove, the crane manufacturer; Gibson; and the crane operator.

Simpson testified that the lifting capacity of the crane on the day of the accident was 75,000 pounds. Fidler testified by deposition that the cylinder was manufactured by a German supplier using a material that he could not name but which possesses a minimum yield strength of 90,000 pounds per square inch ("PSI"). He explained that Grove does not consider a106 B/C carbon grade steel an acceptable alternative material because it is "significantly weaker."

Austin called Studer to testify on the cause of the cylinder failure. Diamond objected that Studer was unqualified and his opinion lacked support. Studer testified that he holds a master's degree in engineering and works as a metallurgist. He described metallurgy as the "science and engineering of metallic elements and mixtures of those elements." His work involves assisting engineering clients with "selecting a suitable material for a specific application." This might involve determining the correct material for use in a new machine or identifying an alternative material for a known use. Part of this work involves determining why

---

[4] Diamond sought mandamus relief from the district court's denial of its motion for leave, but this Court denied relief. *In re Diamond Hydraulics, Inc.*, No. 03-22-00604-CV, 2022 WL 6255698, at *1 (Tex. App.—Austin Sept. 30, 2022, orig. proceeding) (mem. op.).

a particular machine or part of the machine failed. Studer has performed over a thousand failure analyses throughout his career, including on hydraulic cylinders. The district court overruled Diamond's objections and permitted Studer to testify.

Studer testified that he performed two tests on the rebuilt cylinder and a new OEM cylinder. He concluded that the OEM cylinder was constructed of a high-strength, low-alloy steel with a yield strength of 90,000 PSI and a tensile strength of 105,000 PSI, while Diamond rebuilt the bent cylinder with material that has a yield strength of 41,100 PSI and a tensile strength of 75,000 PSI.[5] Based on these tests, his calculations of the stress on the cylinder at the time of the bend, and his review of Fidler's testimony, Studer opined that using the weaker material caused the cylinder to bend.

Austin also presented the testimony of Dr. Jim Wiethorn over Diamond's objection that he was an improper rebuttal witness. Dr. Wiethorn testified that he is a structural engineer and had investigated over 1,200 crane accidents over the course of his career. He addressed the other evidence that Diamond presented to support its theory. For example, he explained why readouts from the crane's data logger, called an overload chart, did not show the crane was overloaded at the time of the accident. Separately, he opined that pictures of the disassembled bearings in the record did not show any signs of a seizure.

After Austin rested its case, Diamond called Gibson to testify about the events leading up to the repair. Gibson testified that Diamond does not offer an express warranty and that no one at Austin requested one or mentioned the promise on the website. Diamond then made an offer of proof that Dr. Hoerner would have testified to the following opinions: (1) "the

---

[5] Studer explained that "if a material's yield strength is exceeded, it deforms" and if its "tensile strength is exceeded, it breaks."

use by Diamond Hydraulics of a106 Grade B/C did not contribute in any way to the failure of the hydraulic cylinder"; (2) "the spherical plain bearing at the top of the hydraulic rod shows signs of seizing"; and (3) "the bending of the hydraulic cylinder barrel was a consequence of the seizing of the spherical plain bearing at the rod end."

The charge informed the jury that the parties stipulated that they "agreed that Diamond Hydraulics would rebuild the Cylinder, and Austin Crane would pay Diamond Hydraulics $26,988.76," Austin paid Diamond that amount, Diamond "used a106 B/C carbon grade steel to make the Cylinder," that steel "has a minimum yield strength of 35,000 pounds per square inch [ ] and an average yield strength of 41,100 PSI," and that the cylinder bent while the crane was lifting an airport bridge weighing 55,000 pounds.

The jury found for Austin and awarded $79,445.77 in damages for both claims. The district court rendered judgment and awarded Austin $79,445.77 in damages and $381,959.75 in attorney's fees. Diamond filed a motion for judgment notwithstanding the verdict challenging the legal and factual sufficiency of the evidence and a motion for new trial asserting that the district court abused its discretion by excluding Dr. Hoerner and permitting Studer and Dr. Wiethorn to testify over Diamond's objections. Both motions were overruled by operation of law.

This appeal ensued. Diamond argues in four renumbered issues that the district court abused its discretion by excluding Dr. Hoerner's testimony and permitting three of Austin's witnesses to testify and that insufficient evidence supports the verdict.

7

## EVIDENTIARY RULINGS

Diamond argues in its first three issues that the district court abused its discretion by denying its motion for leave to designate Dr. Hoerner and by overruling its objections to Studer and Dr. Wiethorn.

### Standard of Review

We review a trial court's evidentiary rulings for an abuse of discretion. *Hlavinka v. HSC Pipeline P'ship, LLC*, 650 S.W.3d 483, 496 (Tex. 2022). A trial court abuses its discretion when its "ruling is arbitrary and unreasonable, made without regard for guiding legal principles or supporting evidence." *In re State Farm Mut. Auto. Ins.*, 629 S.W.3d 866, 872 (Tex. 2021) (orig. proceeding).

### Dr. Hoerner

Diamond argues in its first issue that the district court abused its discretion by denying Diamond's motion for leave to designate Dr. Hoerner as its testifying expert.

Litigants must disclose the identity of each testifying expert, the subject matter of their testimony, and the expert's general impressions and opinions. Tex. R. Civ. P. 195.5. The disclosure must be complete 90 days before the end of the discovery period unless otherwise ordered by the court. *Id.* R. 195.2. The duty to amend or supplement the disclosure "is governed by Rule 193.5." *Id.* R. 195.6. That rule requires a party to amend or supplement its response "reasonably promptly after the party discovers the necessity for such a response." *Id.* R. 193.5(b). A party who does not timely identify a witness or disclose may not call that witness at trial. *Id.* R. 193.6(a). To avoid the automatic exclusion, the proponent of the testimony must establish either that there was a "good cause" for the failure to identify the witness in a timely

manner or that the failure "will not unfairly surprise or unfairly prejudice the other parties." *Id.* The burden of establishing good cause or lack of unfair surprise or unfair prejudice is on the party seeking to call the witness. *Id.* R. 193.6(b).

The good cause exception "allows a trial judge to excuse a party's failure to comply with discovery obligations in difficult or impossible circumstances." *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 718 (Tex. App.—Dallas 2011, pet. denied). Inadvertence, lack of surprise, or the uniqueness of the offered evidence do not, standing alone, constitute good cause. *Id.* Diamond argues that Dr. Macfarlan's "sudden withdrawal" itself constitutes good cause because Diamond had no way of anticipating the need to designate a new expert at such a late date. *See Alvarado v. Farah Mfg.*, 830 S.W.2d 911, 914 (Tex. 1992) (observing that "inability to anticipate use of witness' testimony at trial might support a finding of good cause"). Austin responds that Dr. Macfarlan did not withdraw but was only unavailable for trial and that there were other ways to get his opinion before the jury.

We agree with Austin. Even if Diamond could not have anticipated that Dr. Macfarlan would become unavailable, it could have introduced the transcript of his deposition. *See* Tex. R. Civ. P. 203.6(b) ("All or part of a deposition may be used for any purpose in the same proceeding in which it was taken."); Tex. R. Evid. 801(e)(3) (providing that statement made in deposition in same proceeding is not hearsay). Diamond maintains that this was not truly an option because it did not ask any questions during the deposition, but that does not change that Dr. Macfarlan testified at length that the cylinder crumpled because of a bearing seizure and not the use of carbon steel and provided the basis for his opinions. Diamond's counsel never attempted to introduce any part of this testimony. Diamond also did not prove that

9

Dr. Macfarlan was unavailable for a supplemental deposition.[6] Under these circumstances, the district court could have reasonably concluded that Diamond failed to establish good cause for the substitution. *See PopCap Games*, 350 S.W.3d at 718 ("[I]nadvertence of counsel is not good cause for late designation of new experts." (citing *Alvarado*, 830 S.W.2d at 915)).

As to unfair surprise or unfair prejudice, we focus on whether the evidence will cause unfair surprise or prejudice, not the issue to which the evidence is directed. *Id.* "The fact that a party needs an expert to establish its cause of action does not establish that other parties will not be unfairly surprised by the late designation of an expert." *Id.* Diamond argues that the district court abused its discretion because the record conclusively shows that Dr. Hoerner was essentially identical to Dr. Macfarlan as a witness in relevant respects: both were involved in testing the cylinder and reached the same conclusion based on the same information. Austin responds that it had no reason to anticipate Dr. Hoerner would testify and that permitting the substitution at that juncture would have required significant extra work.

We agree with Austin. Texas law recognizes that a "party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her" in a proper disclosure. *Mid Continent Lift & Equip., LLC v. J. McNeill Pilot Car Serv.*, 537 S.W.3d 660, 673 n.39 (Tex. App.—Austin 2017, no pet.) (citing *Alvarado*, 830 S.W.2d at 915). Dr. Hoerner's name appears frequently in the record regarding his involvement in the testing on the cylinder and the creation of Dr. Macfarlan's report, but there is no indication that Dr. Hoerner might testify. Every indication was that Dr. Macfarlan would be Diamond's sole testifying witness. Moreover, permitting the substitution would require Austin to depose

---

[6] The district court asked Diamond's counsel to contact Dr. Macfarlan and ask if he would be willing to appear for "a Zoom pretrial hearing" to explain "what he could do and what he cannot do." Dr. Macfarlan's answer, if any, does not appear in the record.

Dr. Hoerner concerning his qualifications and the basis of his opinions, research whether the difference in their qualifications was relevant, and potentially move to exclude his testimony based on any differences in qualifications or gaps in his analysis. Based on these facts, we conclude that the district court did not abuse its discretion when it implicitly concluded that Diamond failed to show that permitting Dr. Hoerner's testimony would not unfairly surprise or prejudice Austin. *See Wilson v. Murphy*, No. 02-23-00207-CV, 2024 WL 1561468, at *9–10 (Tex. App.—Fort Worth Apr. 11, 2024, no pet.) (mem. op.) (concluding that proponent failed to establish lack of unfair surprise or prejudice in late designation of expert who appeared in previously-disclosed records and whose testimony allegedly would have been "materially the same" as earlier expert affidavit).

We overrule Diamond's second issue.[7]

**Studer's Testimony**

Diamond argues in its third issue that the district court abused its discretion by permitting Studer to testify about opinions he generated in rebuttal to Dr. Macfarlan's opinions

---

[7] Diamond also argues that excluding Dr. Hoerner's testimony amounts to an improper "death penalty" sanction. "A death penalty sanction is any sanction that adjudicates a claim or defense and precludes the presentation of the claim or defense on the merits." *Duncan v. Park Place Motorcars, Ltd.*, 605 S.W.3d 479, 487 (Tex. App.—Dallas 2020, pet. withdrawn). Due process prohibits imposing a case-determinative sanction "unless the offending party's conduct during discovery justifies a presumption that its claims or defenses lack merit." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 (Tex. 2012). This rule applies to discretionary sanctions imposed for discovery abuse. *In re First Transit Inc.*, 499 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2016, [mand. denied]) (orig. proceeding) (citing Tex. R. Civ. P. 215.2–.3). Even if the exclusion of Dr. Hoerner's testimony is case-determinative—an issue we express no opinion on—the automatic exclusion of evidence under Rule 193.6 is not a death penalty sanction. *See In re J.M.S.*, No. 05-22-01296-CV, 2024 WL 2287205, at *4 (Tex. App.—Dallas May 21, 2024, no pet.) (mem. op.) (holding that exclusion of evidence pursuant to Rule 193.6 is not death–penalty sanction); *F1 Constr., Inc. v. Banz*, No. 05-19-00717-CV, 2021 WL 194109, at *2 n.4 (Tex. App.—Dallas Jan. 20, 2021, no pet.) (mem. op.) (same).

11

when Dr. Macfarlan did not testify.[8]  *See Waldrep v. Texas Emps. Ins. Ass'n*, 21 S.W.3d 692, 706 (Tex. App.—Austin 2000, pet. denied) ("[A]lleged rebuttal evidence must be in fact offered to rebut other evidence, not as a part of the proponent's case-in-chief."). Specifically, Diamond argues that the district court should not have permitted Studer to testify about the pi tape measurements of the cylinder or the swelling because both items are mentioned in his rebuttal letter. Austin responds that the purpose of Studer's testimony was to rebut other evidence in the record.

We agree with Austin that there was no abuse of discretion, but for a different reason. That Studer titled his letter "rebuttal letter" does not mean that Studer is offering rebuttal evidence, i.e., evidence that "is inadmissible in the first instance" that "become[s] relevant and admissible in rebuttal." *Id.* The pi tape measurements and the hoop stress calculations are part of the basis of Studer's opinion that Diamond's use of carbon steel in the rebuild caused the cylinder to bend. In other words, both are admissible in the first instance. *See id.* We conclude that the district court did not abuse its discretion by permitting Studer to testify to both matters.

We overrule Diamond's third issue.

**Dr. Wiethorn's Testimony**

Diamond argues in its fourth issue that the district court abused its discretion by permitting Dr. Wiethorn to testify as a rebuttal witness during Diamond's case-in-chief. Diamond also argues that the district court improperly allowed Dr. Wiethorn to discuss the overload chart before Diamond had an opportunity to use the chart. *See id.* Austin responds that

---

[8] Diamond also argues under this issue that Studer was not qualified to testify on the cause of the cylinder bending. We overrule this argument for the reasons set out in our sufficiency analysis.

Diamond did not object to Dr. Wiethorn testifying at that point and there was no abuse of discretion in permitting him to testify regarding the overload chart.

We agree with Austin. Austin had previously asked the court's permission for Dr. Wiethorn to testify during the case-in-chief because a scheduling conflict would prevent him from testifying after October 5, 2022. Diamond raised no objection to the timing of his testimony but objected to him testifying about the overload logs. Diamond has waived any complaint about the timing of Dr. Wiethorn's testimony. *See* Tex. R. App. P. 33.1(a) (requiring litigants to make timely and specific objection and secure ruling to preserve error for appellate review). His testimony about the overload logs was not rebuttal evidence because the district court had already admitted the logs. *Cf. Waldrep*, 21 S.W.3d at 706 (explaining rebuttal evidence "must be in fact offered to rebut other evidence").

We conclude the district court did not abuse its discretion by permitting Dr. Wiethorn to testify, and we overrule Diamond's fourth issue.

## SUFFICIENCY OF THE EVIDENCE

In its fifth issue, Diamond challenges the legal and factual sufficiency of the findings that it breached the contract and express and implied warranties, and the legal sufficiency of the finding that it breached an implied warranty.

**Standard of Review**

When reviewing for legal sufficiency, "we view the evidence in the light most favorable to the verdict, crediting favorable evidence when reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not." *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 794 (Tex. 2020). When a party challenges the legal sufficiency of an

13

adverse finding on which it did not bear the burden of proof at trial, the party "must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). There is no evidence to support a finding if: (1) evidence of a vital fact is absent, (2) rules of law or evidence bar us from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Pike*, 610 S.W.3d at 783.

In reviewing for factual sufficiency, "we examine the entire record, considering the evidence in favor of and contrary to the challenged finding." *Wichita County v. Enviromental Eng'g & Geotechnics, Inc.*, 576 S.W.3d 851, 862 (Tex. App.—Austin 2019, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). When a party attacks the factual sufficiency of an adverse finding on which it did not bear the burden of proof, the party "must demonstrate that the adverse finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Patriot Contracting, LLC v. Shelter Prods., Inc.*, 650 S.W.3d 627, 648–49 (Tex. App.—Houston [1st Dist.] 2021, pet. denied).

**Breach of Warranty**

We start with Diamond's claim that there is insufficient evidence that it breached a warranty. The jury answered "yes" to the question: "Was the failure, if any, of Diamond Hydraulics to comply with a warranty a producing cause of damages to Austin Crane?" The charge provides that failing to comply with a warranty "means any of the following":

Failing to comply with an express warranty.

An express warranty is any affirmation of fact or promise made by Diamond Hydraulics that relates to the repair of the Cylinder and becomes

14

part of the basis of the bargain. It is not necessary that formal words such as "warrant" or "guarantee" be used or that there be a specific intent to make a warranty.

OR

Failing to perform services in a good and workmanlike manner. A good and workmanlike manner is that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.

We first consider whether there is sufficient evidence that Diamond breached the implied warranty of good and workmanlike repair. *See Gonzales v. Southwest Olshan Found. Repair Co.*, 400 S.W.3d 52, 56 (Tex. 2013) (discussing "implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner"). The charge defines a "good workmanlike manner" as "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *See id.* Diamond argues that the evidence is insufficient because Studer is not qualified to testify as an expert on whether Diamond performed the repair in a good and workman like manner.[9] Austin responds that Studer is qualified to testify on the type of material that should be used for a repair to meet that standard and that there is sufficient evidence to support the judgment.

We agree with Austin. An expert must be qualified by "knowledge, skill, experience, training, or education" to "help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. To meet this standard, the expert's knowledge, skill, experience, or training must concern "the specific issue before the court which would

---

[9] We assume without deciding that Diamond preserved its objection to Studer's qualifications.

15

qualify the expert to give an opinion on that particular subject." *In re Commitment of Bohannan*, 388 S.W.3d 296, 305 (Tex. 2012) (citing *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)). Diamond argues that Studer is not qualified because he testified that he has "no knowledge of how hydraulic cylinders are repaired, and had not ever repaired one himself." But the "specific issue" before the court was not the repair method of hydraulic cylinders in general but whether a106 B/C carbon grade steel is appropriate material to use in rebuilding a hydraulic cylinder that is part of a crane with a lifting capacity of 75,000 pounds. Studer's knowledge, training, and expertise—set out in detail in the background section of this opinion—qualify him to testify on the correct material to use in rebuilding a hydraulic cylinder that is part of a crane with a lifting capacity of 75,000 pounds.

Based on this knowledge and the tests he performed, Studer testified that a106 B/C carbon steel is not the correct material to use in the repair because it is much weaker than the OEM material and the cylinder is part of a crane with a lifting capacity of up to 75,000 pounds. Applying the appropriate standards of review, we conclude there is legally and factually sufficient evidence that Diamond did not repair the cylinder "in a manner generally considered proficient by those capable of judging such work." *See Gonzales*, 400 S.W.3d at 56.

Because the evidence showing Diamond's breach of the implied warranty of good and workmanlike repair is sufficient to uphold the entire damages award, we need not consider whether there is sufficient evidence that Diamond also breached an express warranty or that it breached a contract with Austin. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). We overrule Diamond's first issue.

16

**CONCLUSION**

We affirm the district court's judgment.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed:   August 30, 2024

17